### COMMONWEALTH vs. LUCY ANN MINK.

Middlesex.    Nov. 26.— Dec. 10, 1877.    COLT & LORD, JJ., absent.

By the law of this Commonwealth, suicide is deemed criminal as *malum in se*, and although an attempt to commit it is not punishable, yet a person who, in attempting to commit it, accidentally kills another who is trying to prevent its accomplishment, is guilty of criminal homicide.

INDICTMENT for the murder of Charles Ricker at Lowell, in the county of Middlesex, on August 31, 1876. Trial before *Ames* and *Morton*, JJ., who allowed a bill of exceptions in substance as follows :

It was proved that Charles Ricker came to his death by a shot from a pistol in the hand of the defendant. The defendant introduced evidence tending to show that she had been engaged to be married to Ricker; that an interview was had between them at her room, in the course of which he expressed his intention to break off the engagement and abandon her entirely that she thereupon went to her trunk, took a pistol from it, and

attempted to use it upon herself, with the intention of taking her own life; that Ricker then seized her to prevent her from accomplishing that purpose, and a struggle ensued between them; and that in the struggle the pistol was accidentally discharged, and in that way the fatal wound inflicted upon him.

The jury were instructed on this point as follows: " If you believe the defendant's story, and that she did put the pistol to her head with the intention of committing suicide, she was about to do a criminal and unlawful act, and that which she had no right to do. It is true, undoubtedly, that suicide cannot be punished by any proceeding of the courts, for the reason that the person who kills himself has placed himself beyond the reach of justice, and nothing can be done. But the law, nevertheless, recognizes suicide as a criminal act, and the attempt at suicide is also criminal. It would be the duty of any bystander who saw such an attempt about to be made, as a matter of mere humanity, to interfere and try to prevent it. And the rule is, that if a homicide is produced by the doing of an unlawful act, although the killing was the last thing that the person about to do it had in his mind, it would be an unlawful killing, and the person would incur the responsibility which attaches to the crime of manslaughter.

" Then you are to inquire, among other things, and if you reach that part of the case, Did this woman attempt to commit suicide in the presence of Ricker? and, if she did, I shall have to instruct you that he would have a right to interfere and try to prevent it by force. He would have a perfect right, and I think I might go further and say that it would be his duty, to take the pistol away from her if he possibly could, and to use force for that purpose. If then, in the course of the struggle on his part to get possession of the pistol to prevent the person from committing suicide, the pistol went off accidentally, and he lost his life in that way, it would be a case of manslaughter, and it would not be one of those accidents which would excuse the defendant from being held criminally accountable.

" Did she get into such a condition of despondency and disappointment that she was trying to commit suicide, and was about to do so? If that was her condition, if she was making that attempt, and he interfered to prevent it and got injured by an

accidental discharge of the pistol, it would be manslaughter."
The jury returned a verdict of guilty of manslaughter; and the
defendant alleged exceptions.

*W. B. Gale*, for the defendant. To support the instructions
given in this case, it is not enough that the attempt to com-
mit suicide should be only sinful, wicked and morally wrong, but
it must be criminal and unlawful in a legal sense; it must be
an offence, a crime, known to the law and punishable thereby.
*Regina* v. *Packard*, Car. & M. 236. By the common law, the
killing one's self was a felonious homicide, and, it not being pos-
sible to punish the offender directly, he was made to suffer the
penalty in his reputation and his estate. But the whole subject
of crimes and their punishment has been revised by the Legis-
lature of the Commonwealth, and consequently the common law
in reference thereto has been repealed by implication. *Common-
wealth* v. *Cooley*, 10 Pick. 37. *Commonwealth* v. *Marshall*, 11
Pick. 350. *Lakin* v. *Lakin*, 2 Allen, 45. *Commonwealth* v.
*Dennis*, 105 Mass. 162. Gen. Sts. *c*. 168, § 8.

It therefore follows that the attempt to commit suicide is not
a crime or an offence known to and recognized by the law in this
Commonwealth, unless the statutes, which by implication have
repealed the common law, have so mentioned it and provided a
punishment for it. But it is decided in *Commonwealth* v. *Den-
nis*, 105 Mass. 162, that the attempt to commit suicide is not
indictable or punishable in this Commonwealth. An act cannot
be criminal or unlawful in a legal sense unless it constitutes an
offence which subjects the person who commits it to legal pun-
ishment therefor, nor can it be said to be recognized by the law
as criminal. As there is no law in force in this Commonwealth,
either statute or common, which in any manner, even by impli-
cation, recognizes the attempt at suicide as criminal or unlawful,
or prohibits or provides any punishment for it, it is not criminal
or unlawful, but only sinful, or morally wrong; the court erred
in basing its instructions on the ground that the defendant was
committing a criminal and unlawful act.

If the attempt to commit suicide by the defendant was crim-
inal and unlawful, then it is admitted that the deceased had a
moral and legal right to interfere in a proper manner and with
sufficient force, and if, in such effort to restrain her, he was acci-

dentally killed, the defendant would be criminally liable; if, however, the attempt of the defendant to commit suicide was not a crime, but only sinful and morally wrong, the deceased had no legal right to interfere by force, but only a moral right to interfere and try to restrain the defendant from committing a sinful and immoral act, and if, in such interference upon moral grounds only, the pistol was accidentally discharged, the defendant would not be criminally liable therefor.

*W. C. Loring,* Assistant Attorney General, (*C. R. Train,* Attorney General, with him,) for the Commonwealth.

GRAY, C. J. The life of every human being is under the protection of the law, and cannot be lawfully taken by himself, or by another with his consent, except by legal authority. By the common law of England, suicide was considered a crime against the laws of God and man, the goods and chattels of the criminal were forfeited to the King, his body had an ignominious burial in the highway, and he was deemed a murderer of himself and a felon, *felo de se.* *Hales* v. *Petit,* Plowd. 253, 261. 3 Inst. 54. 1 Hale P. C. 411–417. 2 Hale P. C. 62. 1 Hawk. *c.* 27. 4 Bl. Com. 95, 189, 190. "He who kills another upon his desire or command is, in the judgment of the law, as much a murderer as if he had done it merely of his own head." 1 Hawk. *c.* 27, § 6. One who persuades another to kill himself, and is present when he does so, is guilty of murder as a principal in the second degree; and if two mutually agree to kill themselves together, and the means employed to produce death take effect upon one only, the survivor is guilty of the murder of the one who dies. Bac. Max. *reg.* 15. *Rex* v. *Dyson,* Russ. & Ry. 523. *Regina* v. *Alison,* 8 Car. & P. 418. One who encourages another to commit suicide, but is not present at the act which causes the death, is an accessory before the fact, and at common law escaped punishment only because his principal could not be first tried and convicted. *Russell's case,* 1 Moody, 356. *Regina* v. *Leddington,* 9 Car. & P. 79. And an attempt to commit suicide is held in England to be punishable as a misdemeanor. *Regina* v. *Doody,* 6 Cox C. C. 463. *Regina* v. *Burgess,* Leigh & Cave, 258; *S. C.* 9 Cox C. C. 247.

In the Colony of Massachusetts, by the Body of Liberties of 1641, all lands and heritages were declared to be free, not only

from all feudal burdens, but from all "escheats and forfeitures upon the death of parents or ancestors, be they natural, casual or judicial," to which later codes, besides inserting the word "unnatural," added "and that forever." Body of Liberties, art. 10; 28 Mass. Hist. Coll. 218. Mass. Col. Laws (ed. 1660) 48; (ed. 1672) 88; Anc. Chart. 147. The principle thus declared has always been followed in practice; and there has accordingly never been in Massachusetts any forfeiture upon one's death on conviction or suicide, unless under some particular statute creating the crime, of which no instance is remembered. 5 Dane Ab. 4, 251, 252. 7 Dane Ab. 318. But suicide continued to be considered *malum in se*, and a felony.

In 1660, the Legislature "judgeth that God calls them to bear testimony against such wicked and unnatural practices, that others may be deterred therefrom," and therefore enacted that every self-murderer "shall be denied the privilege of being buried in the common burying-place of Christians, but shall be buried in some common highway where the selectmen of the town where such person did inhabit shall appoint, and a cart-load of stones laid upon the grave, as a brand of infamy, and as a warning to others to beware of the like damnable practices." 4 Mass. Col. Rec. pt. i. 432; Mass. Col. Laws (ed. 1672) 137; Anc. Chart. 187. That statute, though fallen into disuse, continued in force until many years after the adoption of the Constitution of the Commonwealth. 7 Dane Ab. 208, 298.

An early statute of the Province directed that the form of verdict upon a coroner's inquest should state "where, at what time, by what means, with what instrument and in what manner the party was killed or came by his death," and that "if it appear to be self-murder, the inquisition must conclude after this manner, viz.: And so the jurors aforesaid say upon their oaths, that the said A. B. in manner and form aforesaid, then and there voluntarily and feloniously, as a felon of himself, did kill and murder himself, against the peace of our sovereign Lord the King, his crown and dignity." Prov. St. 1700–1701 (12 W. III.) *c.* 3, § 7; 1 Prov. Laws (State ed.) 429; Anc. Chart. 350. This accorded with the usual, though perhaps not necessary, form at common law. 1 Saund. 356, note. A statute, passed at the close of the American Revolution, upon the same subject,

reënacted these directions, except in substituting for the last clause, "against the peace and dignity of the Commonwealth and the laws of the same." St. 1783, *c.* 43, § 2.

In *Commonwealth* v. *Bowen,* 13 Mass. 356, it was held that where one counselled another to commit suicide, who by reason of his advice, and in his presence, did so, the adviser was guilty of murder. The grounds of the decision of that case appear more clearly in the full report of the trial in a pamphlet published at Northampton, in 1816, from which the statement of the case in 13 Mass. is taken.

The indictment, drawn by Perez Morton, Attorney General, contained two counts. The first count alleged that Jonathan Jewett, with a cord, of which he had tied and fastened one end around his neck, and the other end around the iron grate of a window, "feloniously, wilfully and of his malice aforethought, did hang and strangle himself," and by reason thereof died, and so, "as a felon of himself, in manner and form aforesaid, feloniously, wilfully and of his malice aforethought, did kill and murder himself." This count then went on to allege that the defendant, "before the felony and self-murder aforesaid," "feloniously, wilfully and of his malice aforethought, did counsel, hire, persuade and procure the said Jonathan Jewett the felony and murder of himself as aforesaid, in manner and by the means aforesaid, to do and commit," and so the defendant the said Jewett, "in manner and form aforesaid, feloniously, wilfully and of his malice aforethought, did kill and murder." The second count was an ordinary count for murder, alleging that the defendant murdered Jewett by tying and fastening and procuring to be tied and fastened a cord around his neck and around the iron grate of a window, and thus hanging, strangling and suffocating him, and causing and procuring him to be hung, strangled and suffocated. Bowen's Trial, 3–6.

At the trial, before Chief Justice Parker and Justices Jackson and Putnam, the attorney general put in evidence, without objection, the verdict of the coroner's jury, finding in substance that Jewett was found dead in prison, with a cord around his neck and around the iron grate, and concluding, in the form prescribed by the St. of 1783, that he "feloniously and as a felon of himself killed and murdered himself." Bowen's Trial, 12.

The defendant's counsel, in argument, having stated that the first count charged the defendant as an accessory before the fact by aiding and abetting the murder, and the second count as the actor or principal in the murder, the Chief Justice suggested that he conceived both counts to charge the defendant as principal, and to this the attorney general assented. p. 22.

The Chief Justice, in charging the jury, said: "You have heard it said, gentlemen, that admitting the facts alleged in the indictment, still they do not amount to murder; for Jewett himself was the immediate cause and perpetrator of the act which terminated in his own destruction. That the act of Bowen was innocent no one will pretend, but is his offence embraced by the technical definition of a principal in murder? Self-destruction is doubtless a crime of awful turpitude; it is considered in the eye of the law of equal heinousness with the murder of one by another. In this offence, it is true the actual murderer escapes punishment; for the very commission of the crime, which the the law would otherwise punish with its utmost rigor, puts the offender beyond the reach of its infliction. And in this he is distinguished from other murderers. But his punishment is as severe as the nature of the case will admit; his body is buried in infamy, and in England his property is forfeited to the King. Now if the murder of one's self is felony, the accessory is equally guilty as if he had aided and abetted in the murder of A. by B.; and I apprehend that if a man murders himself, and one stands by, aiding in and abetting the death, he is as guilty as if he had conducted himself in the same manner where A. murders B And if one becomes the procuring cause of death, though absent, he is accessory." Bowen's Trial, 51, 52. It is evident that this part of the charge related solely to the first count; for the introductory words " admitting the facts alleged in the indictment " could have no application to the second count; and what was said about an accessory was comparatively immaterial, because the defendant, as we have already seen, was charged as a principal only.

Suicide has not ceased to be unlawful and criminal in this Commonwealth by the simple repeal of the Colony Act of 1660 by the St. of 1823, c. 143, which (like the corresponding St. of 4 G. IV. c. 52, enacted by the British Parliament within a year

before) may well have had its origin in consideration for the feelings of innocent surviving relatives; nor by the briefer directions as to the form of coroner's inquests in the Rev. Sts. *c.* 140, § 8, and the Gen. Sts. *c.* 175, § 9, which in this, as in most other matters, have not repeated at length the forms of legal proceedings set forth in the statutes codified; nor by the fact that the Legislature, having in the general revisions of the statutes measured the degree of punishment for attempts to commit offences by the punishment prescribed for each offence if actually committed, has, intentionally or inadvertently, left the attempt to commit suicide without punishment, because the completed act would not be punished in any manner. Rev. Sts. *c.* 133, § 12. Gen. Sts. *c.* 168, § 8. *Commonwealth* v. *Dennis,* 105 Mass. 162. After all these changes in the statutes, the point decided in *Bowen's case* was ruled in the same way by Chief Justice Bigelow and Justices Dewey, Metcalf and Chapman, in a case which has not been reported. *Commonwealth* v. *Pratt,* Berkshire, 1862.

Since it has been provided by statute that "any crime punishable by death or imprisonment in the state prison is a felony, and no other crime shall be so considered," it may well be that suicide is not technically a felony in this Commonwealth. Gen. Sts. *c.* 168, § 1. St. 1852, *c.* 37, § 1. But being unlawful and criminal as *malum in se,* any attempt to commit it is likewise unlawful and criminal. Every one has the same right and duty to interpose to save a life from being so unlawfully and criminally taken, that he would have to defeat an attempt unlawfully to take the life of a third person. Fairfax, J., in 22 E. IV. 45, pl. 10. *Marler* v. *Ayliffe,* Cro. Jac. 134. 2 Rol. Ab. 559. 1 Hawk. *c.* 60, § 23. And it is not disputed that any person who, in doing or attempting to do an act which is unlawful and criminal, kills another, though not intending his death, is guilty of criminal homicide, and, at the least, of manslaughter.

The only doubt that we have entertained in this case is, whether the act of the defendant, in attempting to kill herself, was not so malicious, in the legal sense, as to make the killing of another person, in the attempt to carry out her purpose, murder, and whether the instructions given to the jury were not therefore too favorable to the defendant.         *Exceptions overruled.*