CASE 80—PROSECUTION AGAINST ULYSSES HICKS AS AN ACCESSORY BE-
FORE THE FACT TO THE SUICIDE OF ANOTHER.—SEPTEMBER 23.

# Commonwealth v. Hicks.

APPEAL FROM GRAVES CIRCUIT COURT—R. J. BUGG, CIRCUIT JUDGE.

FROM AN ORDER DIRECTING A VERDICT IN FAVOR OF DEFENDANT THE
COMMONWEALTH APPEALS. AFFIRMED.

SUICIDES—ACCESSORIES BEFORE THE FACT—PUNISHMENT—PROOF—UN-
CORROBORATED CONFESSIONS.

1. Under Ky. St. 1903, sec. 1128, providing that in all felonies.
accessories before the fact shall be liable to the same punishment
as the principal, and may be prosecuted jointly with the principal
or severally, though the principal be not taken or tried, an ac-
cessory before the fact to a suicide is guilty of murder as a
principal in the second degree, though he was absent at the time
of the suicide.
2. Where, in a prosecution for homicide, as an accessory before the
fact to a suicide, there was no evidence of any accessorial acts
committed by defendant, except his own statements with refer-
ence thereto, which were in the nature of confessions, uncorrobor-
ated as required by Cr. Code, sec. 240, the direction of a verdict
of not guilty was proper.

W. H. HESTER, COMMONWEALTH ATTORNEY, N. B. HAYS, ATTORNEY-
GENERAL, AND LORAINE MIX, FOR APPELLANT.

"An accessory before the fact is one who was absent when the
act was committed, but who procured, counseled, commanded, or
abetted the principal or actual doer of the act, to commit it."
Clark's Crim. Law, sec. 48.

We submit that where it appears from defendant's statements
that he purchased morphine for the deceased on a certain Monday
and said it was for deceased and that he delivered it to deceased
and offered to bet that deceased would not be alive until the fol-
lowing Saturday night, that when he delivered the drug he asked
deceased to put off killing himself until Saturday night so that he
could be present, that deceased invited his friends to attend his
funeral on the following Sunday; it is a reasonable conclusion
from the statement of his attending physician that deceased died

from the drug obtained for him by defendant, coupled as it was
with the further statement by defendant that he "knew more
about the deceased's trouble than anybody but would never tell
it." Under this evidence the question of defendant's guilt as ac-
cessory before the fact should have been submitted to the jury.

### CITATIONS.

Wharton's Crim. Law, secs. 225, 227, 233, 234, 448, 144; 3
Stephen's Hist. Cr. Law, 8 Clark's Crim. Law, sec. 48; 86 Ky.,
Stat., sec. 1128; True v. Com., 12 R., 596.

OPINION OF THE COURT BY JUDGE BARKER—AFFIRMING.

Ulysses Hicks was indicted by the grand jury of Graves
county, charged with being accessory before the fact to the
self murder, or suicide, of one Chris Haggard. A trial
resulted in the court's sustaining a motion of the accused
for a peremptory instruction to find him not guilty, made at
the close of the Commonwealth's testimony. To review this
judgment this appeal is prosecuted under section 337 of the
Criminal Code.

The evidence for the Commonwealth was substantially as
follows: Tom Sears testified that he was standing at the
corner of Hunt's drug store, when Hicks came along, and
smiled, and said: "I have got to go to the drug store, and
get Chris Haggard a quarter's worth of morphine. I reckon
he's going to kill himself." Shortly afterwards, he met the
accused, who told him that he had obtained the morphine,
and also that he had delivered it to Haggard. After the
death of Haggard, Hicks told the witness of a conversation
which took place between himself, Haggard, and one Arnett,
on the Saturday night before the purchase of the morphine,
in which Haggard said that would be the last night that
they would ever be together. Mrs. Lizzie Hicks, a sister of
Haggard, and a relative by marriage of the accused, testi-
fied that, on Wednesday preceding the death of Haggard,

the accused offered to bet her that Chris Haggard would not be alive until Saturday night. Ben Hunt, the druggist, testified that he sold the accused half a drachm of morphine, which he said he was purchasing for a young man by the name of Haggard. Mrs. Lucy Hicks, another sister of Haggard, and also a relative to the accused by marriage, testified to the following conversation between the accused and Haggard: "On Wednesday night before he died, Ulysses asked him, when he started home, what night he had set for him to come back, and Chris told him Friday night, and Ulysses says: 'Put it off. I can't come.' And Chris says: 'I will put off killing myself until Saturday night, and you all can come to my burying Sunday.' At the time of this conversation the witness said her brother ·Chris was playing the guitar, and "seemed like he was just as lively as he could be. I didn't think there was anything the matter with him." Dr. A. A. Hurt testified that, on the Saturday night of the week in which the morphine was purchased by the accused, he was called to the bedside of Chris Haggard. The witness said: "When I got down there, he was lying in bed, unconscious, like he was nearly dead, and I inquired of his mother how long he had been that way, and she said he came in about 10 o'clock at night and she told me how he did, and I soon decided he was poisoned on morphine,· or some preparation of opium. From what his mother told me, and his symptoms, I decided he was suffering from some preparation of opium." To the question: "Did you ever succeed in arousing him?" the witness said: "Well, yes, sir; to some extent.. We worked with him, and got him up out of bed, and walked him around some, but could not keep him aroused but for a few minutes at a time. He would go right back to sleep again. Q. Did he send or call for any one? A. Yes, sir;

about twice, I think. Q. Who was it? A. Ulysses Hicks."
The witness testified that Haggard died from the effects of
opium, or morphine. Mrs. Lucy Hicks being recalled, stated
that, after the burial of Haggard, the accused said that
he knew more about Chris' troubles than anybody, but
would never tell it.

The crime with which the accused stood charged is, we
believe, a somewhat novel one, certainly in Kentucky. Black-
stone, in his Commentaries (volume 4, p. 189), says: "Fel-
onious homicide is an act of a very different nature from
the former, being the killing of a human creature, of any
age or sex, without justification or excuse. This may be done
either by killing one-self, or another man. Self-murder,
the pretended heroism, but real cowardice, of the Stoic
philosophers, who destroyed themselves to avoid those ills·
which they had not the fortitude to endure, though the
attempting it seems to be countenanced by the civil law,
yet was punished by the Athenian law with cutting off the
hand which committed the desperate deed. And also the
law of England wisely and religiously considers that no
man hath a power to destroy life, but by commission from
God, the author of it; and as the suicide is guilty of a
double offense—one spiritual, in invading the prerogative
of the Almighty, and rushing into his immediate presence
uncalled for; the other temporal, against the King, who
hath an interest in the preservation of all his subjects—the
law has therefore ranked this among the highest crimes,
making it a peculiar species of felony, a felony committed
on one's self. And this admits of accessories before the
fact, as well as other felonies; for if one persuades another
to kill himself, and he does so, the advisor is guilty of mur-
der."

In Bishop's New Criminal Law (section 1187) it is said: "The same principle which forbids one to take the life of another prohibits equally the taking of his own life. Therefore, self murder, or suicide, like any other murder, is a common law felony." And in subsection 5 of the foregoing section it is said: "As suicide is felony, not misdemeanor, if it is committed in the advisor's absence, the latter at the common law goes free of punishment, because the principal, being dead, can not be first convicted. In reason, on a question probably not decided, the statutes, which widely prevail among us, making the accessory before the fact in felony a principal felon, should, in the States wherein they have been enacted, be held to work a reversal of this doctrine, subjecting the instigator in these cases to punishment." Clark, in his work on Criminal Law (section 72, p. 164), thus states the rule: "Suicide, however, being a felony at common law, it has been held that one who counsels another to commit suicide and is present when the act is committed, is guilty of murder as a principal in the second degree. If the advisor is absent at the time of the suicide, he can not be punished at common law, as he is an accessory before the fact, and can not be punished until the conviction of the principal." In 21 Am. & Eng. Ency. Law (2d Ed.) p. 98, the law is thus stated: "Under the common law, if one counsel another to commit suicide, and the other by reason of the encouragement and advice kills himself, the advisor was guilty of murder as an aider and abettor, provided he was present when the advice was carried out; but if he was not present he was a mere accessory before the fact, and escaped punishment because of the impossibility of his principal being tried first and convicted. The abolition of the distinction between aiders and

accessories has, however, carried away this distinction with it, so that a person may now be convicted of murder for advising a suicide, whether absent or present at the time it is committed, provided the State is able to prove that the suicide was the result of this advice, and not of the volition of the deceased, himself." See, also, Commonwealth v. Bowen, 13 Mass., 356, 7 Am. Dec., 154.

Section 1128, Ky. St., 1903, provides: "In all felonies, the accessories before the fact shall be liable to the same punishment as the principal, and may be prosecuted jointly with the principal, or severally, though the principal be not taken or tried, unless otherwise provided in this chapter." Robertson, in his work on Kentucky Criminal Law and Procedure (section 185), says: "Suicide, or self-murder, is a felony at the common law. It has therefore been held that, if one kills himself upon the advice of another, the adviser, if present when the act is done, is guilty of murder as a principal in the second degree. If the adviser is absent at the time of the suicide, he can not be punished at the common law, because, being an accessory before the fact the principal must first be convicted; but by statute in this State, as we have seen, accessories before the fact may be arrested and tried, although the principal has not been taken or tried, and the rule of the common law does not, therefore, apply. So where two persons agree to commit suicide, and only one of them kills himself, the survivor is a principal in the murder of the other." It can not be said that an accessory before the fact in self-murder is not liable to punishment under the terms of the statute because, his principal being of necessity dead, he can not be punished by any earthly sentence for his crime. We have seen that suicide at the common law is murder, and our statute (section 1149, Ky. Sts.) fixes the punishment of wilful murder

Commonwealth v. Hicks.

at death or confinement in the penitentiary for life, in the discretion of the jury. The case stands, in principle, as if one was accessory before the fact for the murder by his principal of a third person, and, after the commission of the crime, the principal should immediately kill himself. In this case, it would be impossible to punish the principal; but it is not believed that under any sound reasoning the accessory would thereby go scot free. On the contrary, the very object of the statute is to make the punishment of the accessory entirely independent of the conviction or punishment of the principal. We conclude, then, that under the law as it now stands in Kentucky an accessory before the fact in a case of suicide is subject to the punishment for the crime of willful murder.

It remains, then, to ascertain whether or not the Commonwealth's evidence authorized, if uncontradicted, the conviction of the accused in this case. Section 240 of the Criminal Code is as follows: "A confession of a defendant, unless made in open court, will not warrant a conviction, unless accompanied with other proof that such an offense was committed." Examining the evidence in the light of this provision of the Code, what do we find? Nearly all the evidence consists of the admissions out of court of the defendant. Leaving out the statements of the accused, there is this testimony, and nothing more: Hurt said that, on the Monday preceding the death of Haggard, he sold Hicks half a drachm of morphine. Mrs. Lucy Hicks testified to a conversation between Haggard, Arnett, and the accused on the Wednesday preceding the suicide, in which, as the party was about to break up, the accused asked Haggard what night he should come again? Whereupon Haggard said: "Friday." The accused said: "Put it off, I can't come Friday." Then replied Haggard (substantially): "I

Commonwealth v. Hicks.

will put off killing myself until Saturday, but no longer. You all can come to my burial Sunday." On Saturday night Dr. Hurt says he was called to his bedside, and found him dying from opium poison. He expired Sunday morning about 9 a. m. What evidence is there here that tends to show that the crime of being accessory before the fact to a suicide was committed? There may be evidence that suicide was committed; but that is not the crime, of course, with which the defendant is charged. He is charged with being accessory, and there is no evidence of accessorial acts, save in his own confessions. Taken as a whole, this case presents an anomaly seldom found in the annals of actual crime. The accused smilingly says to Sears: "I am on my way to purchase morphine for Chris Haggard. I reckon he is going to kill himself." In the presence of his sister, Lucy Hicks, Haggard, while playing on the guitar, and seemingly in the best of spirits, appoints the day of his death, and refuses to extend the time to accommodate the engagements of his friend beyond one day—from Friday until Saturday. At the appointed time, he is found by the physician dying from opium poison. Nobody seems to have regarded the matter, except in the light of a joke, and the motive, if there was one, is not disclosed.

We are of opinion that an analysis of the evidence, and the enforcement of the provisions of the Code on the subject of confessions, warranted the trial judge in giving the peremptory instruction to find the defendant not guilty, of which the Commonwealth complains. And this conclusion is certified to the circuit court.