### W. T. Aven v. The State

No. 8664.   Delivered April 1, 1925.

Rehearing denied Nov. 25, 1925.

1.—Murder by Poisoning—Indictment—Held Sufficient.

Where an indictment charges murder by administering poison, and charges that the appellant administered the poison and caused the deceased to swallow it, with intent on his part to kill and injure her, and that he did thereby kill her with malice aforethought, it is held sufficient, and negatives the idea that appellant merely prepared the poison, and

went no further.  Modifying Sanders v. State, 54 Tex. Crim. Rep. 101; Distinguishing Grace v. State, 44 Tex. Crim. Rep. 195.

**2.—Same—Indictment—Sufficiency of—Rule Stated.**

As a general rule, the state's burden as to its pleading is met in any case, when in language of ordinary use and meaning, it is stated that the accused, at a time and place named, did those things which are denounced by statute as a crime.

**3.—Same—Confession of Accused—Admissibility of Same—Retiring Jury.**

When the admissibility of a confession of the accused is raised on the trial, it is sometimes proper to retire the jury and hear evidence in their absence on the admissibility of the confession, but in the instant case no such showing is made, and the trial court did not err in refusing to retire the jury while evidence was being heard on this question.

**4.—Same—Charge of Court—On Insanity—Properly Requested:**

Where there was no evidence on the trial raising the issue of the insanity of the accused, at the time of the making of the confession by him, the court properly refused to submit such issue in his charge to the jury, as affecting the admissibility of his confession.

**5.—Same—Requested Charge—Grouping Issues—Properly Refused.**

Where a requested charge groups and sets forth various and sundry matters which if believed by the jury would render appellant's confession inadmissible, it was properly refused by the trial court.  The admissibility of the appellant's confession was correctly submitted by the court in his main charge and presents affirmatively appellant's theories in regard to the inadmissibility of his confession, and there is no error presented in the refusal of his requested charge on this issue.

**6.—Same—Indictment—Allegation and Proof—No Variance Shown.**

Where an indictment charges murder by the administering of arsenic, and there is no evidence in the case that the poison administered was phosphorus, there was no error in the failure of the court to submit this issue of a variance, between the allegation and proof in his charge to the, jury, and refusing appellant's special charge presenting such issue.

**7.—Same—Charge of Court—Issues Not Raised—Properly Refused.**

No issue that is not raised by the evidence on the trial should be affirmatively submitted in the charge of the court.  There was no evidence raising the issue of insanity in this case, nor was it a case relying upon circumstantial evidence, and the court properly refused to submit such issues to the jury.

ON REHEARING

**8.—Same—Indictment—Sufficiency Of.**

In his motion for rehearing, appellant insists that we were in error in our original opinion in holding the indictment in this case sufficient, and again cites us to the case of Sanders v. State, 54 Tex. Crim. Rep.

101.   We are not in accord with the position in that case as to the sufficiency of the indictment, and in so far as same holds the indictment insufficient it is overruled.   Where the proof of the facts as alleged in the indictment would make out the state's case, it would follow that the allegation need not go beyond the proof necessary.   It is not required by any of the authorities that more be alleged than is necessary to be proven.

### 9.—Same—Indictment—Allegation Held Sufficient.

Where an indictment alleges that appellant administered the poison on July 3, 1921, and that same caused the death of deceased on the 5th day of July, 1921, this is a sufficient allegation that the death of the deceased occurred within a year of the administration of the poison.   See Branch's Ann. P. C., page 1025.

### 10.—Same—Jeopardy—Not Sustained.

Where on a trial under an indictment for murder containing four counts charging different means of death by poisoning, the dismissal of the three last counts, and a conviction under the first count, which conviction was, on appeal, reversed and remanded, on a second trial jeopardy had not attached as to the first count, and a second trial under said first count was not barred.

### 11.—Same—Evidence—Held Sufficient.

We have carefully reviewed this case on rehearing, in view of the extreme penalty of death inflicted by the jury.   Appellant admitted on the witness stand that he gave his wife a dose of salts.   In his confession he said that he put arsenic in the salts, and put it there with the intention of killing his wife.   No traces of any other poison were found in the analysis of the contents of the wife's stomach after her death than arsenic.   We are forced to the conclusion that the evidence is fully sufficient to support the verdict of the jury, and the motion for rehearing is overruled.

Appeal from the District Court of McLennan County. Tried below before the Hon. Richard I. Munroe, Judge.

Appeal from a conviction of murder, penalty assessed at death.

The opinion states the case.

*Joe W. Taylor* and *W. V. Dunnam* of Waco, for appellant.

*Tom Garrard*, State's Attorney, and *Grover C. Morris*, Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—Appellant was convicted of murder in the District Court of McLennan County, and his punishment fixed at death.

Appellant insists that the first count of the indictment, under which he was convicted, is fatally defective.   Same is as follows:

"The grand jury of the County of McLennan and State of Texas, duly selected, organized and empaneled by the Judge of the 54th Judicial District of Texas, holding session of the District Court in and for said county, upon their oaths in said court present that heretofore, on or about the 3rd day of July, A. D. 1921, in said County of McLennan and State of Texas, W. T. Aven, did then and there unlawfully, with malice aforethought, kill Maud Aven, by then and there with intent to injure and kill her, the said Maud Aven, causing her the said Maud Aven to swallow a certain noxious substance injurious to the health and functions of the body, to-wit, arsenic, and the said swallowing of the said noxious substance by her the said Maud Aven, so administered as aforesaid by the said W. T. Aven did cause the death of the said Maud Aven on the 5th day of July A. D. 1921, in said County of McLennan and State of Texas."

The defect urged is that same should have said that Maud Aven "took the poison not knowing same to be a poison, or as the result of force, threats or fraud." Sanders v. State, 54 Tex. Crim. Rep. 101, and Grave v. State, 44 Tex. Crim. Rep. 195, are relied on. Both were suicide cases in which there seems little or no question of the fact that the deceased actually did all of those things which brought about death and in which the accused was sought to be held as an accomplice or a principal upon the theory that he had procured the means or furnished the instrument by which the deceased in each case took her own life. There is nothing in the Grace case which appears to be a discussion of, or in any way refers to, the sufficiency of the indictment. The opinion in the Sanders case is so written as to leave it in doubt, as we understand it, as to what the exact conclusion of this court was. It does hold that the indictment must charge and the proof show that the poison was administered to deceased by the accused, and that if its language does not so import it will not be sufficient, and in the earlier part of the opinion appears language to the effect that if the indictment does not in some way negative the idea of self-destruction, or does not assert that the deceased did not know that the substance administered was poison, or does not show that it was administered by force, threats or fraud, it will not be sufficient. In the instant case the indictment charges that W. T. Aven * * * did unlawfully, with malice aforethought, kill Maud Aven by then and there with intent to injure and kill her, the said Maud Aven, causing her to swallow * * * arsenic, and the said swallowing of the said * * * so ad-

ministered to her as aforesaid by the said W. T. Aven did cause the death of the said Maud Aven. This indictment, analyzed in the light of the reasoning in the opinion in the Sanders case, supra, leads us to conclude that when an indictment charges that the appellant administered the poison and caused the deceased to swallow it with intent on his part to kill and injure her, and that he did thereby kill her with malice aforethought, this sufficiently negatives the idea that appellant merely prepared the poison and went no further,—and that deceased thereafter took it herself with suicidal intent. The word "administer" in Webster's International Dictionary has the meaning "to give as a dose", and every meaning therein ascribed to said word denotes an act on the part of him who administers. The word is not one with merely technical meaning, but is of general use, and in the sense used in the instant indictment its import is to charge the accused as the actor, not merely to the extent of placing the poison in the hands or possession of deceased but as doing what is necessary to make its destructive power effective. No rule of pleading applicable under ordinary statutes requires the State to affirmatively plead a denial of matters in defense, nor to negative such defensive theories as may be within the knowledge of the accused. One charged in the usual form with murder by shooting another, might defend, in an appropriate case, by proving that he did not shoot the deceased but merely gave to deceased the pistol with which the latter shot himself. That such facts might develop and be within the knowledge of the accused, would furnish no ground for any attack upon the indictment. One charged with theft might defend on the ground that it was a case of mistaken identity as to the alleged stolen property, etc., etc., none of which would furnish basis for a motion to quash the indictment. So,—one who is charged as the actor, who administers poison to another with malice aforethought and with intent to kill and that he does thereby kill, does not seem to us to be in position of making a motion to quash the indictment, because forsooth he may be able to show on the trial that he did not in fact administer the poison to deceased but merely gave it to her in order that she might use it for self-destruction. There is no contention in the instant case on the facts that appellant merely procured the poison and placed it where the deceased could in fact take it. The facts show to the contrary and are in line with the allegation in the indictment that appellant administered to his wife the poison in question. The State's burden as to its pleading is met in any case when, in

language of ordinary use and meaning, it is stated that 'the accused at a time and place named did those things which are denounced by statute as a crime.

We are constrained to believe that the distinguished jurist who wrote in the Sanders case, supra, after making the statements referred to in the earlier part of the opinion, when he came to the reasoning out of his conclusions, got away from the doctrine of said statements, and that his reasoning is strictly in line with what we have here concluded should be the proper announcement of the law applicable to the indictment. As stated above, there appears in the earlier part of the opinion a statement to the effect that the indictment would not be sufficient if it did not allege in some way that the fact that the article given was not known by deceased to be poison, or else that it was given by force, threats or fraud. From said opinion in the Sanders case we quote:

"It may be correctly stated, however, at this point that if the person in fact by his own hand gave or administered the medicine, even then he might be guilty."

This refers to the guilt of the person who, knowing the purpose of another to kill himself, administers with his own hand such poison to the would-be suicide. We quote further from said opinion:

"However, a party would not be justified in taking the life of the party who desires to forfeit his life by shooting the would-be destroyer at his request, for in that case it would be the direct act of the accused, and he would be guilty of homicide, although he fired a shot at the request of the would-be suicide. So it would be with reference to poison. If the suicide obtains the poison through the agency of another, that other knowing the purpose of the suicide to take his own life, the party furnishing it would not be guilty, yet if the party furnishing it, knowing the purpose of the suicide, and he himself gives the medicine or poison by placing it in the mouth or other portions of the body, which would lead to the destruction of life, then it would be the act of the party giving, and he would not be permitted to defend against the result of such fact. If appellant furnished Miss Baxter with the carbolic acid at her request, with full knowledge on his part that she intended to take it, and did take it, and destroyed her life, he, having no further agency in it, would not be guilty. But if knowing her purpose of destroying her life, at her request he prepared the medicine and himself placed it in her mouth, and she swallowed it, then it would be an administration of this

poison and he would be punished in case of death as a murderer."

Manifestly one who at the request of another prepares a poison, and then in obedience to the request of the deceased places it in her mouth, can from no view be said to use force, threats or fraud, or to administer poison without the knowledge of such deceased. If then placing the poison in the mouth of deceased, regardless of her attitude or acquiescence or request, would make the accused guilty of homicide, we are unable to see the need for other allegations than one which simply states the fact of the acting and the administration of the poison to the deceased by the accused. We further note that it is the custom of this court when it holds an indictment fatally defective, to reverse and order the dismissal. This was not done in the Sanders case, supra, which was merely reversed and remanded. We do not believe the learned judge erred in the instant case in overruling the motion to quash.

Appellant's first bill of exceptions in this record was taken to the refusal of peremptory instruction asked by the defense. Its refusal was not error. Nor are we able to perceive error in the action of the trial court in declining to retire the jury while determining the admissibility of the confession of the accused. There might be cases in which this should be done, but no such showing is here made. The third bill of exceptions complains of the admission of the confession of the defendant. We have carefully examined all the matters complained of in said bill and are of opinion that the trial court properly admitted the evidence.

Appellant's fourth and fifth bills of exception appear to be combined. It is shown that exceptions were taken to the charge for the reason that it did not tell the jury that if appellant was in a state of insanity at the time the confession was obtained, it should not be considered for any purpose. We do not perceive any evidence in the record justifying the court in giving such a charge. The bill further complains of the refusal of a special charge seeking to have the jury told that if they believed that the county attorney promised appellant that if he would make a confession his co-defendant would be tried first and appellant would be taken to Hillsboro for certain purposes. Said special charge then proceeds in a manner not warranted by law to group and set forth various and sundry matters which, if believed by the jury, would render the confession incompetent. We do not believe a charge of this kind should have been given. The learned trial judge instructed the jury

in the charge given them in regard to these matters and seems to have affirmatively presented appellant's theories in regard to the inadmissibility of said confession.

The sixth bill of exceptions is based on appellant's exception to the court's charge for the reason that it did not submit to the jury that if he gave his wife phosphorus, a poison not named in the indictment, that they should acquit. In appellant's confession he stated that he gave to his wife arsenic. The chemist who analyzed the contents of the stomach of deceased after death testified to the large quantity of arsenic found. The indictment charged a murder by the administration of arsenic. We find nothing in the record calling for the charge upon the hypothesis set forth in the special charge under dicussion. The bill of exceptions presenting this matter is qualified at length by the court setting out testimony showing conclusively that said charge was not appropriate.

An exception was taken to the charge for its failure to submit the theory of insanity. We find no testimony in the record calling for the submission of such defensive theory to the jury. Nor are we able to agree with appellant's contention that the court should have submitted the law of circumstantial evidence.

We have given this record our careful consideration in view of the extreme penalty of the law but are of the opinion that a trial was given fair and impartial alike to the State and the defendant.

The judgment will be affirmed.                    *Affirmed.*

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant chiefly complains in this motion that we erred in our original opinion in holding the indictment sufficient, and he again insists that we were wrong in not following the case of Sanders v. State, 54 Tex. Crim. Rep. 101. We are not in accord with the position in that case as to the sufficiency of the indictment, and in so far as same holds the indictment insufficient it is overruled. We are in accord with those parts of the opinion which assert that if the party furnishing the poison to a suicide, knowing the purpose of said suicide, and the party himself gives the medicine or poison by placing it in the mouth or other portion of the body of said suicide, which would lead to destruction of life, then it would be the criminal act of the party giving and he would not be permitted to defend against the result of such act; also we are in accord with the statements in said opinion that if a party,

knowing the purpose of another to destroy her own life, at her request, prepared the medicine and himself placed it in her mouth and she swallowed it, then this would be an administration of such poison and the party giving it would be punished in case of death as a murderer. We observe that if proof of such facts would make out the State's cause, it would follow that the allegation need not go beyond the proof needful. It is not required by any of the authorities that more be alleged than is necessary to prove. Referring to the Sanders case, supra, could it be said that if the indictment had charged that Sanders with malice aforethought, intending to kill Pearl Baxter at her request, prepared certain poison, to-wit: carbolic acid, and at her request placed same in her mouth and same was then and there swallowed by her, from the effects of which she did then and there die,—that this would be to charge that the poison was administered by force, threats or fraud or without the knowledge of said Pearl Baxter? The question answers itself in the negative. No case can be found which by any stretch of the imagination or ingenious argument could be made to hold this an allegation of force, and clearly it would not be of threats or fraud. But, we further say that if an allegation that the accused placed the poison in the mouth of deceased at her request,—could be construed into an allegation that this meant force, by how much more would an indictment allege force when it stated that he administered the poison and caused her to take it into her stomach, omitting any reference to her request.

In addition to the Sanders and Grace cases which were re- viewed in our original opinion, appellant cites on this point in his motion Branch's Annotated P. C., Sec. 521; Hughes v. State, 19 S. W. Rep., 509; 13 Texas, 65; 176 S. W. Rep. 49, and 188 S. W. Rep. 49. We have examined each of these and find nothing in them except announcements of general principles, which we deem not contrary to our views as herein expressed.

It is urged that the indictment does not allege that the deceased came to her death from the poison administered to her, "within a year." The indictment alleges that appellant administered the poison on July 3, 1921, and that same caused the death of deceased on the 5th of July, 1921. This pleads the death of deceased within a year from the administration of the poison and follows in this regard the form laid down by Mr. Branch in his Annotated P. C., p. 1025.

Appellant argues at length, and ingeniously, that because the

indictment herein contained four counts, each charging murder by poison, to all of which upon his original trial he pleaded not guilty, and that conviction was therein had upon the first count, he has been in jeopardy under the other counts, and the case having been carried to the Court of Criminal Appeals and there reversed under a former conviction, and being on trial after said reversal upon the first count of said original indictment, that jeopardy had attached in the case, of which fact judicial knowledge was had in the trial court and that appellant should have been freed from this prosecution for said reason. Had this matter been raised in the trial court the contention of appellant would have been properly overruled. No such doctrine obtains. We do not think it necessary to analyze the proposition at length. To so hold would introduce in our practice in this State a ruling destructive of the rights of the State to plead various counts charging various phases of a single transaction in one indictment, and in all such cases would free the accused where new trials had been granted or reversals had on appeal.

Appellant did not defend against the charge of poisoning his wife by the administration of arsenic, as alleged in the indictment, upon the theory that he did poison her but used phosphorus or some other poison. The fact that defensive testimony supports the proposition that appellant bought rat poison or some other kind of poison from a druggist in Hillsboro, could not be held, in the absence of any testimony showing or tending to show that appellant claimed to have given his wife some other character of poison than arsenic, to require the court to give the jury an affirmative charge relative to the administration of other poison. Appellant admitted on the witness stand that he gave his wife a dose of salts. In his confession he said he put arsenic in the salts and put it there with the intention of killing his wife. No traces of any other poison were found in the analysis of the contents of the wife's stomach after her death, than arsenic. In view of the extreme penalty of the law inflicted upon appellant we have given this case more than ordinary care and consideration, and find ourselves unable to believe that our former decision was not in accordance with the law properly applicable hereto.

The motion for rehearing will be overruled.

*Overruled.*