David Duane EDINBURGH, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–91–0646.

Court of Criminal Appeals of Oklahoma.

Feb. 27, 1995.

Michael Gassaway, Oklahoma City, for appellant at trial.

Gary McCurdy, Asst. Dist. Atty., Dist. Atty's. Office, El Reno, for State at trial.

Richard W. Anderson, Oklahoma City, for appellant on appeal.

Susan Brimer Loving, Atty. Gen., Patrick T. Crawley, Asst. Atty. Gen., Oklahoma City, for appellee on appeal.

### OPINION

JOHNSON, Presiding Judge:

DAVID DUANE EDINBURGH, Appellant, was charged by Information in the District Court of Canadian County in Case No. CRF–90–212 with the crime of Malice Afore-thought Murder, in violation of 21 O.S.Supp. 1989, § 701.7. A jury trial was held before the Honorable Edward C. Cunningham. The jury returned a verdict of guilty and recommended punishment at Life Imprisonment. The trial court sentenced Appellant in accordance with the jury's verdict. From this Judgment and Sentence, Appellant has perfected this appeal.

### FACTS

In January, 1990, Dean Plummer was diagnosed with terminal cancer-multiple myeloma involving his kidneys, lymph system and bone marrow. His wife, Maxine Plummer, was also in poor health, having suffered a heart attack. Dean asked Maxine's son, David Edinburgh, to quit his job and move in with them to help take care of them. David did so, and spent the next five months taking care of Dean, Maxine and the family greyhound business.

Prior to his death, Dean had deteriorated greatly in health. He lost over 100 pounds, and two inches in height. His kidneys also failed, forcing him to go in for dialysis three to four times per week. He was in almost constant pain, and spent a lot of time in the hospital. Finally, the doctors decided that the cancer treatments were not doing any good and decided to discontinue all but the dialysis. In May, they told him that he had approximately two weeks to live.

On May 27, 1990, David Edinburgh shot Dean Plummer in the head with a .22 rifle. He testified that in late March or early April, Dean brought up the subject of suicide and asked David to help him. David refused. The subject was brought up again, but David still refused to go through with it. On the day in question, Dean and Maxine had just returned from visiting his sister. According to Appellant, he was waiting for Dean to get home in order to check with him about putting down a sick greyhound. In anticipation, he had the .22 loaded. When he asked Dean about the dog, Dean begged David to kill him instead of the dog. He told David that he was in great pain, and cried while he asked David to end his life as humanely as David would kill the dog.

David testified that he put the gun up to Dean's head, and Dean told him to just do it and then looked away. David, however, claims that he does not remember pulling the trigger and that he did not know right from wrong when he pulled the trigger. After shooting Dean, David went and got his mother from the barn. He told her what had happened and then took her to the neighbor's house to call the sheriff. When the police came, he told his mother that he was going to jail and emptied out his pockets.

The State put on testimony from several witnesses tending to show evidence of premeditation by Appellant. Jamie Lindsey, the registered nurse who administered dialysis treatment to Mr. Plummer, testified about her conversations with Mr. Plummer wherein he talked about his future plans to open a barbecue restaurant. Lonnie Craighead also testified about his conversations with Mr. Plummer about opening a barbecue restaurant and buying a new pickup truck.

Witness Paul O'Daniel testified that he mowed the grass for Mr. Plummer. He recalled an occasion in May, 1990, when he had a conversation with Appellant wherein Appellant related that he was tired of taking care of sick people, that it was dragging his life down and that he wished "they" would go on and die and have it over with. Another witness, Billy Wood, testified that Appellant and Mr. Plummer "couldn't get along" and "were at each other all of the time." He further testified that approximately two weeks prior to the incident in question, Appellant related, "one of these days I'll kill the old bastard and I'll own the whole place down there."

In his first proposition of error, Appellant asserts that he was deprived of his constitutional rights to Due Process, to a fair trial and to a trial by jury when the trial court refused or failed to issue appropriate instructions on lesser included offenses which he claims the evidence clearly warranted. Appellant submitted written instructions on the lesser included offenses of:

1. Second Degree (Depraved Mind) Murder
2. Second Degree (Culpable Negligence) Murder
3. First Degree (Heat of Passion) Manslaughter
4. First–Degree (Misdemeanor) Manslaughter
5. Negligent Homicide

Appellant claims that, although not requested, instructions on Second–Degree (Felony) Murder and on Aiding and Abetting Suicide were warranted by the evidence and should have been given sua sponte.

## A. FIRST–DEGREE (HEAT OF PASSION) MANSLAUGHTER, FIRST–DEGREE MANSLAUGHTER AND SECOND–DEGREE (DEPRAVED MIND) MURDER.

■ This Court has repeatedly held that an instruction on a lesser included offense need only be given when there is evidence that tend to prove the lesser included offense was committed. Absent such evidence, an instruction should not be given. See *Rawlings v. State*, 740 P.2d 153, 160 (Okl.Cr.1987). First–Degree (Heat of Passion) Manslaughter, First–Degree Manslaughter and Second–Degree (Depraved Mind) Murder all include a similar element: a showing that there was no pre-meditated design to effect death. Here, Appellant placed the gun against the victim's head and pulled the trigger. There could be no other intent than to effect death. As such, the trial court properly refused Appellant's requested instructions for Second–Degree (Depraved Mind) Murder, First–Degree (Heat of Passion) Manslaughter, Second–Degree (Culpable Negligence) Murder. Instructions on Negligent Homicide were also properly not given for the same reasons.

## B. AIDING SUICIDE

■ This is a case of first impression for Oklahoma. Title 21 O.S.1981, Section 813, Aiding Suicide, makes it a crime for anyone "who willfully, in any manner, advises, encourages, abets, or assists another person in taking his own life."

Section 814, Furnishing Weapon or Drug, makes it a crime for anyone "who willfully furnishes another person with any deadly

weapon or poisonous drug, knowing that such person intends to use such weapon or drug in taking his own life, is guilty of aiding suicide, if such person thereafter employs such instrument or drug in taking his own life."

Appellant takes the position that the mere fact that the Legislature passed "two separate statutes makes it clear that the Oklahoma Legislature intended the crime of aiding suicide to apply to either positive euthanasia or passive euthanasia." Specifically, Appellant focuses on the alternative "or" in Section 813, thus making it separate crimes to either (1) advise, (2) encourage, (3) abet, or (4) *assist* another in taking his own life. In this case, Appellant holds that he *assisted* the suicidant who, "while mentally able to decide his own fate, is too debilitated to be physically able to perform the overt act of self-killing and must depend upon his assistant to perform that act at his request." Appellant offers the fact that he took steps to ensure that Dean Plummer's death was immediately reported to the authorities, thus demonstrating any lack of intent of a murder cover-up.

Thirty states currently have laws imposing criminal sanctions for aiding, assisting, causing, or promoting suicide.[1] An additional five states impose criminal penalties under case law.[2] However, as no other states, including Oklahoma[3], seem to have statutes either criminalizing or condoning active euthanasia,[4] our legal analysis centers on case law interpreting criminal homicide statutes.[5]

Many states have distinguished between the direct killing involved in euthanasia and conduct characterizing mere suicide assistance:

> "[The Oregon assisted suicide] statute does not contemplate active participation by one in the overt act directly causing death. It contemplates some participation in the events leading up to the commission of the final overt act, such as furnishing the means for bringing about death, —the gun, the knife, the poison ... But where a person actually performs, or actively assists in performing, the overt act resulting in death, such as shooting or ... administering the poison ... his act constitutes murder ..."

*State v. Bouse,* 199 Or. 676, 264 P.2d 800, 812 (1953), overruled on other grounds by *State v. Fischer,* 232 Or. 558, 376 P.2d 418 (1962). In *Aven v. State,* 102 Tex.Cr. 478, 277 S.W. 1080, 1083 (App.1925), the court held that where the defendant placed the poison in the mouth of a suicide, with knowing intent to help victim complete suicide, he is guilty of

1. M.T. CELOCRUZ, AID–IN–DYING: SHOULD WE DECRIMINALIZE PHYSICIAN–ASSISTED SUICIDE AND PHYSICIAN–COMMITTED EUTHANASIA?; 18 Am.J.L. and Med. 369–94, 377 n. 61 "ALASKA STAT.SECT. 11.41.120 (1989); ARIZ.REV.STAT.ANN.SECT. 13–1103 (1989); ARK.CODE.ANN.SECT. 5–10–105 (Michie 1987); CAL.PENAL CODE SECT. 53A–56 (West 1992); DEL.CODE.ANN. tit. 11 SECT. 645 (1987 & Supp.1990); FLA.STAT.ANN.SECT. 782.08 (West 1986); KAN.SAT.ANN.SECT 21–3406 (1971); ME.REV.STAT.ANN. tit. 17–A, Sect. 204 (West 1965); Act of Dec. 15, 1992, 1993 Mich. Pub. Acts 270 as amended by Act of Feb. 25, 1993, 1993 Mich.Pub.Acts 3 (effective Feb. 25, 1993); MINN.STAT.ANN.SECT. 609.215 (West 1987 & Supp.1993) MISS.CODE ANN.SECT. 45–5–105 (1991); NEB.REV.STAT.SECT. 28–307 (1989); N.H.REV.SAT.ANN.SECT. 630;4 (1986); N.J.STAT.ANN.SECT. 2C:11–6 (West 1982); N.M.STAT.ANN.SECT. 30–2–4 (Michie 1984); N.Y.PENAL LAW SECT. 120.30, 125.15(3), 125.25(1)(b) (McKinney 1987); N.D.CENT. CODE SECT. 12.1–16–04 (Supp.1991); OKLA. STAT.ANN., tit. 21, SECT. 813–818 (West 1983); OR.REV.STAT.SECT. 163.125(1)(b) (1991); 18 PA.CONS.STAT.ANN.SECT. 2505 (1983 & Supp. 1992); P.R. LAWS ANN. tit 33, Sect. 4009 (1983); S.D.CODIFIED LAWS ANN.SECT. 22–16–37 (1988); TEX.PENAL CODE ANN.SECT. 22.08 (West 1989); V.I.CODE ANN. tit. 14, SECT. 2141 (1964); WASH.REV.CODE.ANN. SECT. 9A.36.060 (West 1988); WIS.STAT.ANN. SECT. 940.12 (West 1982)."

2. 18 Am.J.L. & Med. 377, n. 62, supra. "See *Commonwealth v. Hicks,* 118 Ky. 637, 82 S.W. 265, 266–67 (1904); *Commonwealth v. Mink,* 123 Mass. 422, 428–29 (1877); *Blackburn v. State,* 23 Ohio St. 146, 163 (1872); *State v. Jones,* 86 S.C. 17, 67 S.E. 160, 165 (1910); *Turner v. State,* 119 Tenn. 663, 108 S.W. 1139, 1141 (1908)."

3. However, 63 O.S.Supp.1992, § 3101.2(C) contains the following language: "The Oklahoma Rights of the Terminally Ill or Persistently Unconscious Act does not condone, authorize, or approve mercy killing, assisted suicide or euthanasia."

4. 18 Am.J.L. & Med. 269–94, 1993 (M.T. Celo-Cruz), supra.

5. 18 Am.J.L. & Med. 380, 1992, supra.

murder. Thus, where the defendant only furnishes the means by which the victim kills herself, he has merely assisted suicide. But, where the defendant proximately causes the defendant's death he can be held liable for homicide.

In addition, the victim's request is usually irrelevant in criminal prosecutions.[6] "The victim's invitation and consent to the perpetration of a crime does not constitute a defense, adequate excuse, or provocation." *Martin v. Commonwealth*, 184 Va. 1009, 37 S.E.2d 43, 47 (1946). In *Turner v. State*, 119 Tenn. 663, 108 S.W. 1139, 1140 (1908), the defense contended that the accused's conduct was not murder since the victim requested it. However, the Tennessee Supreme Court stated:

> "Murder is no less murder because the homicide is committed at the desire of the victim. He who kills another upon another's desire or command is, in the judgment of the law, as much a murderer as if he had done it merely of his own head."

*Id.* 108 S.W. at 1141.

In *People v. Matlock*, 51 Cal.2d 682, 336 P.2d 505 (1959), the California Supreme Court affirmed, stating that:

> "where a person actually performs, or actively assists in performing, the overt act resulting in death ... it is wholly immaterial whether this act is committed pursuant to an agreement with the victim ..."

Also, other state courts do not recognize the defendant's motive as an element or defense to euthanasia. *People v. Conley*, 64 Cal.2d 310, 49 Cal.Rptr. 815, 822, 411 P.2d 911, 918 (1966) (intentionally engaging in a legally proscribed killing constitutes the necessary malice aforethought for murder. Malice had nothing to do with motive); *People v. Cleaves*, 229 Cal.App.3d 367, 280 Cal.Rptr. 146, 151 (1991) (court refused to fashion a new manslaughter category for a killing performed at the victim's request after defendant killed a friend suffering from AIDS); *Gilbert v. State*, 487 So.2d 1185, 1190 (Fla. Dist.Ct.App.1986) (in killing of wife with advanced alzheimer's disease, the court held

that euthanasia was not a defense to first-degree murder).

Accordingly, we hold that Section 813 does not embrace "positive" (active) euthanasia. Thus, the trial court did not err in failing to instruct on Aiding Suicide.

## C. SECOND–DEGREE (FELONY) MURDER.

■ Appellant contends that the evidence also warranted instructions on the lesser offenses of Second Degree Felony Murder. First, Second Degree Felony Murder is not a lesser included offense of premeditated murder, with which Appellant was charged. See *Ross v. State*, 717 P.2d 117, 121 (Okl.Cr. 1986), affirmed 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80, rehearing denied 487 U.S. 1250, 109 S.Ct. 11, 101 L.Ed.2d 962.

Second, the felony-murder rule requires an underlying felony, where the death of a human occurred as a result of an act or event which happened during the commission of that felony. Appellant claims that the underlying felony was the aiding suicide under 21 O.S.1981, §§ 813 and 814. Since we have determined that Appellant's acts did not fall within the aiding suicide statutes, this argument is without merit.

■ In his second proposition of error, Appellant asserts that he was deprived of his constitutional right of due process to present a defense when the trial court denied him the assistance of a psychiatrist to prepare and present his sole defense of Temporary Insanity. Prior to trial, Appellant filed a motion requesting funds for a state-appointed psychiatrist. This motion was denied by the trial court on October 16, 1990.

The United States Supreme Court held in *Ake v. Oklahoma*, 470 U.S. 68, 74, 105 S.Ct. 1087, 1091–92, 84 L.Ed.2d 53 (1985),

> "that when a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the [Federal] Constitution requires that a State provide access to a psychiatrist's assistance on this issue if the defendant cannot otherwise afford one."

---

**6.** 18 Am.J.L. & Med. 380, supra.

The Supreme Court held that where a defendant is able to make a threshold showing to the trial court that his sanity is likely to be a significant factor in his defense, he should be afforded the assistance of a psychiatrist. The accused makes this threshold showing when he shows that his sanity is "a 'close' question which may well be decided one way or the other ... one that is fairly debatable or in doubt." *Cartwright v. Maynard,* 802 F.2d 1203, 1211 (10th Cir.1986), rev'd on other grounds, 822 F.2d 1477 (10th Cir.1987) (en banc), aff'd. sub nom. *Maynard v. Cartwright,* 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1986).

In the case sub judice, Appellant failed to make the required threshold showing that insanity would be at issue at trial. In his motion for funds for expert witnesses, the defendant made unsupported conclusory allegations, as follows:

6. Specifically, Defendant is in need of the following experts to aid and assist defense counsel in the investigation and preparation for trial:

a) *Psychiatrist*—Defendant has the need to employ a psychiatrist to perform intelligence or personality tests on the Defendant. Defendant's counsel, upon information and belief based on conversations with Defendant and Defendant's family, and actions of the Defendant, including circumstances of the events, believes that the Defendant suffers from mental disease or defect, that would affect capacity to appreciate the wrongfulness of conduct, and that Defendant did not know right from wrong at the time these acts allegedly occurred and was unable to conform to requirements of the law. Clearly, there is a need to determine whether Defendant has the ability to distinguish right from wrong. A determination of this fact is relevant and material in determining guilt.

Appellant offered no evidence to support this assertion.

■ In order to meet the required showing under *Ake,* a defendant must give more than mere undeveloped assertions. *Castro v. State,* 745 P.2d 394, 399 (Okl.Cr.1987). The defendant's allegation must have evidentiary support and particularized facts demonstrating that the defendant's sanity, at the time of the offense, is seriously in question. Thus, this proposition fails.

■ Next, Appellant contends that he was deprived of his constitutional rights to adequate pretrial notice when the trial court allowed the endorsement of four key witnesses on the eve of trial and allowed them to testify over his objections. Four (4) months before trial, Appellant filed a motion to require the state to endorse its witness' names. This motion was granted on October 16, 1990. On the Saturday before the start of trial on Monday, December 10, 1990, when defense counsel dropped by the D.A.'s office, he learned that an endorsement order had been mailed to him. No attempt had been made to notify defense attorney by telephone when the State finally decided to endorse the four witnesses in question.

The record reveals that the four witnesses in question were not on the Information, but their names were mentioned on the investigation report and given to defense counsel at the preliminary hearing. Defense counsel's motion referred to "witnesses who had been interrogated." Thus, the State was well aware and should have known whether or not they would use the witnesses. On the first day of trial, defense counsel raised his objection to the endorsing of the four witnesses. The trial judge decided to stay his decision until just prior to the four witnesses being called.

At that time (the third day of trial), defense counsel again raised his objection. The trial judge overruled his motion to strike the endorsements, but did allow defense counsel a half-hour to meet with the witnesses. When defense counsel returned, he neither asked for a further continuance, nor did he indicate that he was not ready to continue.

■ Because Appellant failed to asked for a continuance or withdraw his announcement of ready for trial, any possible error was waived. As such, Appellant's final proposition is without merit. Where the state asks for witnesses to be endorsed at a late hour, the proper procedure is for the defendant to ask for a continuance, or withdraw his announcement of ready to begin trial. *West v.*

*State,* 617 P.2d 1362, 1369 (Okl.Cr.1980). Where he fails to do this, he has waived any possible error. This proposition fails.

For the foregoing reasons, the Judgment and Sentence are **AFFIRMED.**

LUMPKIN and LANE, JJ., concur.

CHAPEL, V.P.J., dissents.

STRUBHAR, J., recuses.

CHAPEL, Vice Presiding Judge, dissenting:

Edinburgh's defense to this murder charge was insanity. The trial judge instructed the jury on insanity. The State argued his defense should be rejected because he presented no experts to support it. Of course he did not present an expert. He was indigent and his application for assistance was denied in violation of *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). The majority affirms the denial of an expert by holding, in essence, that an indigent defendant must prove he is insane before he is entitled to a psychiatrist to assist in proving his insanity.

In this case, a timely pleading, signed by an officer of the court, was filed clearly setting forth the need and justification for an expert. Moreover, if actual testimonial proof is required by *Ake* (and I do not believe it is) the preliminary hearing testimony is more than sufficient to support the request. I therefore dissent to affirming the conviction and sentence in this case.