James Edward ANTHAMATTEN, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A-17529.

Court of Criminal Appeals of Oklahoma.

Jan. 17, 1973.

Rehearing Denied March 5, 1973.

Howard, Rapp & Gaskill, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Fred Anderson, Asst. Atty. Gen., Kenneth L. Delashaw, Jr., Legal Intern, for appellee.

OPINION

BUSSEY, Judge:

Appellant, James Edward Anthamatten, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court of Tulsa County, Oklahoma, for the offense of Assault and Battery With a Dangerous Weapon, After Former Conviction of a Felony; his punishment was fixed at a term of not less than five (5) nor more than ten (10) years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Thomas Bunch testified that on January 28, 1971, he was employed at Froug's Department Store in the Southland Shopping Center in Tulsa. At approximately 6:30 p. m., while he was waiting on a customer, he observed a woman putting a pair of slacks in her purse. A man, who he identified in Court as defendant was next to her holding up a pair of slacks, which partially blocked his vision. He had a conversation with Mr. Kennedy, the manager, and continued to observe the two persons. He followed them into another section of the store and when he was about ten feet from them, the woman said, "for one lousy pair of pants you got us caught." The defendant said, "do you want to get out of here." (Tr. 16) They both started toward the door and Bunch followed them. He got approximately five feet behind them and stated, "if you would wait just a minute, the manager would like to speak to you." (Tr. 20) The defendant and his companion opened the door and ran down the sidewalk. He and Mr. Kennedy ran after them. Kennedy caught them in the parking lot and attempted to grab the purse from the woman. The defendant hit Kennedy with his fist and knocked him down. The defendant and the woman got into the car and Bunch tried to pull her out. The woman struggled and hollered "get the gun, get the gun." Mr. Kennedy joined in the struggle attempting to remove the woman from the car. The defendant flipped opened a knife and took a swipe at his arm. Mr. Bunch jumped back, and the defendant made two slashes with the knife at Kennedy. They then "floored the car and just went screaming out of the parking lot."

On cross-examination, he testified that he did not identify defendant at a line-up held in May, stating that he was "extremely nervous and was looking for a different colored hair." He further testified that he received a telephone call from an unknown female who gave him descriptions of the two persons and provided him two names, one of which was the defendant's name. He and Kennedy went to the police station on the night after the altercation and "asked to see a file." He testified that "they brought out the file and that was who it was, and there was no doubt as to who it was." (Tr. 42)

Howard Kennedy testified that he was a manager of the department store on the evening in question. His testimony did not differ substantially from the testimony of witness Bunch. He identified the defendant as the person who slashed his hand four times with the knife. On cross-examination, he testified that he had been shown pictures of the defendant at the police station and approximately two months later identified him at a line-up. He testified that he did not identify defendant from the mug shot and line-up but rather "identified him from the man that attacked me." (Tr. 73)

Detective, Larry Johnson testified that February 19, 1971, he arrested the defendant on a warrant for Assault With a Dangerous Weapon. The defendant was "half in and half out of the bathroom window, attempting to go through the window" when he was arrested. He advised the defendant of his Miranda rights and the defendant stated that he had knowledge that the warrant was outstanding and "he wasn't particularly concerned about that particular charge because he did not hurt that old son-of-a-bitch anyway." (Tr. 80)

For the defense, Carolyn Sue Graham testified that she was with her husband, Russell Leroy Graham, at the department store on the evening in question. They took some pants from the store and two men started chasing them, and that her husband, R. L. "must have cut him down." She testified that she had entered a plea of guilty to this charge for Petit Larceny and received a Fifty Dollar ($50.00) fine. She further testified that her husband made her call the police station and tell the police that the defendant had been the man with her. She later called the police station and told them that the defendant had not been the man with her. On cross-examination, she admitted a prior conviction

for Burglary of a Parking Meter, wherein the defendant's wife was her co-defendant.

■ The first proposition asserts that the trial court erred in allowing the admission into evidence of the "tainted identifications made by witnesses Bunch and Kennedy." The record does not reflect that the defendant objected to the identification of defendant by the witnesses, nor does the record reflect that the defendant at any time prior to or during the course of trial, requested an evidentiary hearing. In Bridgeman v. State, Okl.Cr., 496 P.2d 431, we stated:

"The Sole proposition asserts that the trial court erred in admitting the courtroom identification of the defendant in that the lineup was not conducted within the procedures set forth in Thompson v. State, Okl.Cr., 438 P.2d 287. We need only to observe that the defendant did not object to the identification of the defendant by the witness Parsons until the conclusion of his cross-examination. The defendant did not at any time prior to or during the course of the trial request an evidentiary hearing. In Davis v. State, Okl.Cr., 467 P.2d 521, we stated:

'* * * We further observe that *in the event the defendant raises a timely objection to the courtroom identification of the defendant* for the reason that it is based on a pre-trial identification by photograph or line-up * * * the trial court should conduct a hearing outside the presence of the jury and determine if the pre-trial identification procedure was conducted in accordance with the rule enunciated in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149. * * *' (Emphasis added.)

"In the instant case the defendant did not timely request an evidentiary hearing whereupon the trial court could ascertain if the in-court identification was based on an independent source sufficiently distinguishable to be purged of the primary taint of the illegal pre-trial identi-

fication. Absent his timely request in the trial court for an evidentiary hearing, we are of the opinion that this proposition is improperly before this Court."

See also Gonzales v. State, Okl.Cr., 480 P. 2d 930.

■ Although this proposition is improperly before this Court, we observe that the identifications were not so tainted as to render them inadmissible and that the identifications were made in fact from an independent origin. The State's evidence adduced that after receiving a telephone call, Bunch and Kennedy went to the police station and asked to see a file which contained pictures of the defendant. Bunch testified that he did not identify the defendant at the line-up because he was extremely nervous and the defendant's hair color had changed. His identification of the defendant at the trial did not waver despite intensive cross-examination. Witness Kennedy testified that he identified the defendant at the police line-up and that his identification was not based upon the mug shots he observed but rather "identified him from the man that attacked me." (Tr. 73)

■ The second proposition contends that the trial court erred in giving an indeterminate sentence instruction to the jury in that the portion of 57 O.S., § 353 which allows a jury to give harsher indeterminate sentence to a defendant than the trial court could give is unconstitutional.

The defendant cites as authority, United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138, wherein the United States Supreme Court held that a provision in the Federal Kidnaping Act, making the offense of Kidnaping in interstate commerce punishable by death, if the verdict of the jury should so recommend, was invalid as imposing an impermissible burden upon the accused's exercise of his Fifth and Sixth Amendments.

We are of the opinion that this proposition is without merit. If the defendant had waived his right to jury trial or entered a plea of guilty, the trial court could

have sentenced the defendant to the maximum term of ten (10) years imprisonment. In Cooper v. State, Okl.Cr., 415 P.2d 1009, we stated:

"Defendant contends in his second proposition that the Act is ambiguous and indefinite to the extent that it does not meet the constitutional requirements for a penal statute. It is sufficiently stated, to show that it is applicable, 'In all cases where a sentence of imprisonment in the penitentiary is imposed.' The difficulty arises in its application to some crimes, for which the statutory punishment is of short duration. However, that provision in the Act, which provides that the court may fix a minimum and a maximum term, is intended to provide the court with a 'discretionary alternative' in sentencing individuals to terms of imprisonment. This discretionary provision is applicable in jury trials, as well as those in which the defendant knowingly enters a plea of guilty."

We further stated in *Cooper, supra,*

"We are of the opinion that the wording of the Act itself is not ambiguous, but admit that when its application is improperly attempted [sic] to certain crimes, some problems are encountered. The correction for this aspect of the Act must be accomplished by the Legislature, and should not be attempted by the courts. The enactment of legislation is within the province of the Legislature, not the courts."

We further observe that in the instant case, the minimum punishment provided by law was five (5) years. Title 57 O.S., § 354, provides that Pardon and Parole Board shall hear the prisoner's application for parole when he has served the minimum sentence imposed.

The final proposition contends that the trial court erred in allowing the State to use defendant's "purported" conviction for Second Degree Burglary, After Former Conviction of a Felony, for enhancement of a punishment since said "purported" conviction was illegal and void in that the sentence imposed for said conviction was not authorized by law. The record reflects that one of the prior convictions introduced into evidence without objection reflects that on April 7, 1965, the defendant entered a plea of guilty in the District Court of Tulsa County, Case No. 21141, to the offense of Second Degree Burglary, After a Former Conviction of a Felony, and was sentenced to four and one-half (4½) years imprisonment. The defendant correctly argues that the minimum punishment imposed for Second Degree Burglary, After Former Conviction of a Felony was ten (10) years.

It is readily apparent that the After Former Conviction of a Felony portion of the judgment and sentence was a typographical error made in the preparation of the formal instrument. The second page of the Information alleges that the defendant was previously convicted on April 7, 1965, Case No. 21141, in the District Court of Tulsa County of the offense of Second Degree Burglary, and sentenced to a term of four and one-half (4½) years. In dealing with a similar question in Pierce v. Harp, Okl.Cr., 418 P.2d 355, we stated:

"Therefore, it being clear to this Court that the error in the judgment and sentence is a clerical one, we will follow our holding in the case of Friend v. State, Okl.Cr., 379 P.2d 478:

'The Trial court may at any time upon proper showing, by appropriate order *nunc pro tunc,* cause its records to recite the truth, and such records, when corrected, make valid that which was apparently defective.'

"See, also, cases cited therein.

"And, further, in Flowers v. State, Okl. Cr., [sic] 398 P.2d 161:

'Where there is an error in the formal judgment and sentence, a proceeding in habeas corpus to correct the same may be maintained at any time after its rendition.'

"Under the facts herein presented, this Court is of the opinion that the District Court of Oklahoma County should con-

duct a *nunc pro tunc* proceeding and correct the judgment and sentence entered in case #30937, to show that the defendant plead guilty to Burglary Second Degree, and was sentenced therefor, and it is so ordered."

We, therefore, are of the opinion that the District Court of Tulsa County should conduct a *nunc pro tunc* proceeding and correct the judgment and sentence entered in Case No. 21141 to show that defendant plead guilty to Burglary in Second Degree. The judgment and sentence is affirmed.

BLISS, P. J., and BRETT, J., concur.