**Donald Edward HAGGY, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A–17838.**

Court of Criminal Appeals of Oklahoma.

May 2, 1973.

Rehearing Denied May 23, 1973.

Valdhe F. Pitman, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., Kenneth L. Delashaw, Jr., Legal Intern, for appellee.

## OPINION

BLISS, Presiding Judge:

In the District Court of Oklahoma County, Case No. CRF–71–2574, Appellant, Donald Edward Haggy, hereinafter referred to as defendant, is charged, tried, and convicted for the offense of Sale of a Controlled Dangerous Substance. His punishment was fixed at nine (9) years imprisonment and he was assessed a fine of thirty-five hundred dollars· ($3500). From that judgment and sentence he has perfected his timely appeal to this Court.

At the trial, John J. Morgan, an undercover narcotics officer for the Federal Bureau of Narcotics and Dangerous Drugs, testified he was assigned to purchase a quantity of drugs from the defendant. On the 28th of October, 1971, Morgan and two agents, Tom Huey and Joe Cooley, drove to the defendant's residence, Route 1, Box 9, Wayne, Oklahoma. Morgan's testimony further revealed that at approximately 3:00 p. m. Cooley and Huey knocked at the defendant's residence door; that a woman answered; that they asked to speak with

the defendant; and that the defendant then appeared at the door. Cooley and Huey generally conversed about a drug purchase with the defendant responding he had no drugs available. Morgan asked the defendant if he could talk with him and defendant responded by inviting the trio into his residence. Immediately, defendant inquired of Morgan what he desired to purchase. Morgan stated he wanted to purchase large quantities of mini-bennies. Defendant asked if he was interested in THC or LSD with Morgan responding he was only interested in mini-bennies or amphetamines. Thereafter, defendant placed a telephone call. The call was returned and during the telephone conversation, defendant inquired if the recipient of the phone call had "squares" or "tires" for sale further stating he could handle forty "tires" and could make some quick money. At the conclusion of the conversation, defendant agreed to wait for another call. Defendant told Morgan he could sell amphetamines for approximately one hundred dollars per one thousand. In response to the defendant's inquiry of whether Morgan had sufficient money, Morgan showed defendant a large roll of bills. After a final phone call, defendant informed Morgan he would supply fifteen thousand to seventeen thousand amphetamines. Defendant and the trio left the residence, and defendant informed Morgan the distribution point would be the grocery store parking lot at southwest 20th and Portland, Oklahoma City, Oklahoma. At approximately 4:45 p. m. Morgan entered the passenger side of defendant's car at the above location. Morgan again showed his money, defendant removed a package from the console of his car and gave it to Morgan and immediately Morgan drew his weapon, showed defendant his identification, and placed the defendant under arrest for distribution of a controlled dangerous substance. An additional package containing amphetamines was removed from the defendant's coat pocket.

Agent Charles Ryan, of the Oklahoma Bureau of Investigation, testified on the above date he was assigned to provide surveillance of the Haggy residence near Wayne, Oklahoma. He testified he was accompanied by McClain County Sheriff Joe Huddleston and two other officers during this surveillance. Further he stated that with the use of binoculars he observed Agent Morgan accompanied by two other males arrive at the residence at approximately 3:10 p. m. that afternoon. He also observed the three exit the home at approximately 3:30 p. m.

Donald Allen Flint, Oklahoma State Bureau of Investigation Chemist testified he received the pills in question contained in an Oklahoma State Bureau of Investigation Evidence Envelope. This envelope contained sixteen brown paper bags with each containing numerous white tablets. Further he stated, that all tablets were the same size and of identical appearance. A representative random sample was taken from each of the bags and analyzed with the analysis revealing positive test results indicating the tablets contained amphetamine.

On behalf of the defense, the testimony of defendant and his wife, Mrs. Rita Haggy revealed defendant had been a truck driver for approximately eight to ten years and at the time of his arrest, was raising cattle and selling used cars at his farm near Wayne, Oklahoma. Further, defendant stated he was familiar with amphetamines, but never consumed them. On the above mentioned date three men met Mrs. Haggy at the door of the Haggy residence and upon their inquiry concerning defendant, she concluded they were interested in purchasing an automobile they were selling on their property. Defendant stated he approached the door thinking this trio was interested in purchasing this vehicle. The trio then informed him they were interested in purchasing a quantity of mini-bennies with defendant responding he did not deal with them. Mrs. Haggy stated Morgan asked defendant if he could be admitted inside of the premises, followed by the trio more or less pushing their way into the house. Defendant stated that Morgan in-

formed him he was a dealer from Dallas and needed pills. Defendant stated, in an effort to get the individuals out of his house, he phoned an individual named "Frog" at a truck stop. Defendant admitted receiving a telephone call in Morgan's presence, however he stated the telephone conversation was the subject of a purchase of used tires for the car he had for sale. Defendant stated "Frog" later called and advised him he could supply pills. Defendant then agreed to deliver these pills to Morgan as he was afraid of Morgan's size and the possibility he might have "syndicate" connections. Finally, defendant stated Frog was going to receive all money from the transaction, and he only made delivery as a favor to Morgan and to "get him out of his house so he would leave him alone."

The consideration of defendant's assignments of error will be in a different sequence than as presented in his trial brief. Considering defense counsel's second proposition; that a demurrer to the information should have been sustained, we first note the language of the information as amended. The body of the charge states as follows:

"On or about the 28 day of October A. D., 1971, in Oklahoma County, State of Oklahoma, Donald Edward Haggy whose more full and correct name is to your informant unknown, then and there being, did then and there wilfully, unlawfully and feloniously commit the crime of Unlawful Distribution of a Controlled Dangerous Substance (63 OSA 2–401) in the manner and form as follows, to-wit:

"That is to say, the said defendant, in the county and state aforesaid, and on the day and year aforesaid, then and there being, did then and there wilfully, unlawfully, wrongfully and feloniously distribute a controlled dangerous substance, to-wit: STIMULANT in the form of approximately 16,000 small white round double scored tablets, amphetamine tablets, by attempting to sell and distributing the same to one JOHN J. MORGAN for the sum of $1,500.00, good and lawful money of the United States of America."

Title 63 O.S.1971 § 2–401, in pertinent part, states as follows:

"A. Except as authorized by this act, it shall be unlawful for any person:

"1. To manufacture, distribute, dispense, or possess with intent to manufacture, distribute, or dispense, a controlled dangerous substance;

"2. To create, distribute, or possess with intent to distribute, a counterfeit controlled dangerous substance.

"B. Any person who violates this section with respect to:

"2. Any other controlled dangerous substance classified in Schedule I, II, III, or IV is guilty of a felony and shall be sentenced to a term of imprisonment for not less than two (2) years nor more than ten (10) years and a fine of not more than Five Thousand Dollars ($5,000.00). Such sentence shall not be subject to statutory provisions for suspended sentences, deferred sentences or probation."

Title 63 O.S.1972 Supp. § 2–206, in pertinent part, states as follows:

"The controlled substances listed in this section are included in Schedule II.

\*　\*　\*　\*　\*　\*

"D. Unless specifically excepted or unless listed in another schedule, any material, compound, mixture or preparation which contains any quantity of the following substances having a stimulant effect on the central nervous system:

"1. Amphetamine, its salts, optical isomers, and salts of its optical isomers."

■ The information in the instant case alleges every material element of the offense and sufficiently apprises defendant of grounds on which he must defend. Therefore, it is legally sufficient to use as a vehicle to bring this charge before the court. See Tolleson v. State, Okl.Cr., 400 P.2d 576 (1965).

Collaterally, defendant argues the proof at trial was not sufficient to meet the alleged allegations. We find this contention without merit.

■ In defense counsel's first proposition he contends the district court is without jurisdiction to try the instant offense as the evidence at preliminary hearing was not legally sufficient to bind the defendant over for trial. We have searched the record in vain for some indication of the filing of a timely motion to quash the preliminary hearing in compliance with the rule in Whitman v. District Court of Oklahoma County, Okl.Cr., 423 P.2d 740 (1967). The absence of defendant moving to quash preliminary hearing prior to his district court arraignment, results in the defendant voluntarily submitting to the district court's jurisdiction. See Archie v. State, Okl.Cr., 488 P.2d 951 (1971). Therefore, the district court gained jurisdiction on the defendant's voluntary plea and this proposition is without merit.

■ Defense counsel in his third proposition contends the trial court erred in giving an entrapment instruction as the proof does not support such an instruction. At pages 11 and 12 of the original record, the record shows defendant submitted two requested instructions on the question of entrapment and defense counsel adamantly argued the propriety of his requested instructions (Tr. 167–169). To permit counsel to argue at trial his requested instructions on entrapment should have been given and on appeal entertain his argument the proof does not support such instructions is logically inconsistent to say the least. It is our opinion the trial court's submission to the jury of an instruction on the defendant's theory of defense, requested by defense counsel at trial, waived any objection to the instruction on the ground it was not supported by the evidence. Even if the submission of the entrapment instruction could be determined error, it was a harmless one, as it inured to the defendant's benefit.

In counsel's fourth proposition it is submitted that the trial court erred in permitting the information endorsement of Donald Allen Flint as a witness for the State. This endorsement was made after trial proceedings began. A review of the endorsements on the instant information reveals no person was endorsed as a state chemist, however, the office of state chemist was listed, accompanied by the office address. It is obvious from the information listed in this section the state chemist or one of his inferiors would testify at this trial.

■ In a felony case which is less than a capital offense, the trial court has the discretion to permit names of additional witnesses to be endorsed on the information at any time. Robnett v. State, 51 Okl.Cr. 33, 299 P. 241 (1931). It is obvious that, in an offense of this nature, the state chemist is to be called upon to identify the composition of the substance received by Agent Morgan. It is difficult to perceive how the defense could be surprised and his defense prejudiced by the testimony of the witness called to identify the substance, especially in light of the fact the office conducting the examination is endorsed. Consequently, the above circumstances are insufficient to establish the trial court abused its discretion. We therefore find this proposition to be without merit.

■ Defense counsel contends in his fifth proposition the trial court improperly permitted a prosecuting witness, Agent Morgan, to remain in the courtroom subsequent to the invocation of the rule. The exclusion from the courtroom of a witness of the State is not an absolute right but rests within the sound discretion of the

trial court. Baker v. State, Okl.Cr., 306 P.2d 344 (1957). There is nothing within this record which manifests an abuse of the trial court's discretion. We therefore find this proposition to be without merit.

Defense counsel in his sixth and seventh propositions submits facial expressions of the judge and a comment of the prosecutor, prejudiced the defendant. The prosecutor's comment, in substance, objected to a witness disclosing certain agents' names on the ground it would endanger their lives. The court's response to this comment was an admonition to the jury not to consider the statement. The resolution of the objection of the prosecutor culminated in the court requiring the witness to name those agents. We find under the circumstances the admonition of the court cured any possible error which might have arisen from this comment. See Ballard v. State, 92 Okl.Cr. 420, 223 P.2d 782 (1950). Furthermore, we have carefully studied the record of trial proceedings and find no manifestation of the trial court conducting itself in a manner which prejudiced the defendant. We therefore find this proposition to be without merit.

The final proposition contends the punishment is excessive. We have repeatedly held that unless punishment imposed shocks the conscience of the court, we will not disturb the jury's assessment. Jackson v. State, Okl.Cr., 494 P.2d 358 (1972). The punishment imposed is within the range established by statute. The punishment, in light of the quantity of drugs involved in this case, coupled with the fact the defendant was subjected to less than the maximum punishment under the law, does not shock the court's conscience and for this reason we will not disturb the jury's assessment. We therefore find this proposition to be without merit. Judgment and sentence affirmed.

BUSSEY and BRETT, JJ., concur.