Larry JOHNSON, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–719.

Court of Criminal Appeals of Oklahoma.

Jan. 4, 1977.

Rehearing Denied Jan. 27, 1977.

James D. Jordan, Okmulgee, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Eric Warner, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Larry Johnson, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Okmulgee County, Case No. CRF–74–160, for the offense of Robbery with Firearms, in violation of 21 O.S. 1971, § 801. His punishment was fixed at five (5) years' imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial, Gayla Adams testified that she was currently serving a five year sentence for the robbery of Mrs. Viersen Terry. On June 18, 1974, she went to the Terry residence with Cephus Dyer and the defendant in Cleo Hill's car. They arrived at approximately 9:30 p. m. and she went to the house and asked to use the telephone because her car had broken down. She was admitted into the house by the maid and pretended to call for assistance. She· thanked the maid and started to leave the house. She dropped her purse between the doors so they would remain open. Defendant and Cephus Dyer came into the house; the maid screamed and defendant slapped her, knocking her to the floor. Defendant then took a ring from the maid's finger. She and Dyer proceeded to Mrs. Terry's bedroom and took her rings. Defendant brought the maid into the bedroom and they taped and restrained both women. They started going through the house looking for anything of value; the doorbell rang and they ran out the back door. Defendant and Cephus Dyer stated they were going back to the house to get the women's cars. Dyer picked her up in approximately ten minutes in Mrs. Terry's car. They went to a location in Okmulgee to wait for the defendant, who did not arrive as agreed and they returned to Tulsa. She testified that defendant had a gun when he entered the house. She and Dyer sold Mrs. Terry's rings for $10,000.00, and the maid's ring for $1,400.00.

Lieutenant Chester Hodge of the Okmulgee Police Department testified that on June 18, 1974, he answered a robbery report at the Terry residence. He discovered that the house had been ransacked and that a Cadillac was missing from the garage.

Viola Turney testified that she had been employed for the previous five years as Mrs. Terry's nurse and companion. On the evening in question, at approximately 10:00 p. m., the doorbell rang; she answered the door and a young girl asked to use the telephone because she was having car trouble. She dialed two different numbers and then stated that she would go back and try to start the car herself. She unlocked the door to let her out and two black males entered the house. She tried to push them back and the defendant knocked her to the floor. He put his foot on her stomach and made her take off her rings. She had difficulty removing one of the rings and defendant yelled to his companion to bring him a gun. The other male and the young girl went into Mrs. Terry's room. Defendant took her into Mrs. Terry's bedroom and tied her up while the other black male tied Mrs. Terry. Defendant stuck a gun to the back of her head and asked where the money and jewelry were. The doorbell rang and the two males and the female ran out the back door. She started untying herself and the defendant returned and tied her up again. They demanded the keys to Mrs. Terry's car and left. She freed herself and ran across the street to call the police. She testified that Mrs. Terry was approximately eighty-five years old and in bad health.

For the defense, Officer Fred Baker testified that he was acquainted with Cephus Dyer; that defendant was several inches taller than Dyer. The parties agreed that certain portions of the testimony of Edith Viersen Terry, given in the trial of *State of Oklahoma vs. Cephus Dyer*, could be read to the jury. She testified that the house was "kind of dark." [Tr. 59] She testified that the man with Dyer was shorter and darker.

Gail Ward testified that she was with the defendant all day on June 18, 1974 and defendant left her apartment at approximately 6:30 p. m. She observed the defendant coming out of an apartment across the street from her house between 8:00 and 8:30 p. m. She next observed the defendant at 11:00 p. m. coming from his mother's house.

Charles Wilson testified that he played cards with the defendant on the evening in question about 7:00 p. m., and that they played for approximately an hour and a half.

Defendant testified that Dyer and Gayla Adams spent the night on June 17th at his house, and left about 3:00 or 4:00 the following afternoon. He went to Charles Wilson's house and played cards for approximately two hours; then went to Louie Brown's house and stayed about an hour and a half. He testified that he was not at Mrs. Terry's house and denied any participation in the robbery.

Bertha Tarkington testified that defendant had a good reputation for truth and veracity.

Louie Brown testified that defendant came to his house on June 18th at approximately 10:00 p. m. and stayed for about forty-five minutes to an hour.

■ Defendant asserts, in the first assignment of error, that the trial court erred in overruling the Demurrer to the information. Defendant argues that the information does not specifically set forth the place where the offense was committed, thus depriving him of adequate notice of the crime to properly defend himself. We are of the opinion that this assignment of error is wholly without merit. The information alleges that the defendant did rob one Mrs. Edith Viersen Terry in Okmulgee County, Oklahoma. In dealing with a similar assignment of error in *Carlile v. State*, Okl. Cr., 493 P.2d 449 (1972), we stated:

". . . [I]t is not necessary to charge the offense was committed in any particular place; it is only necessary to allege and prove that an offense was committed in the county as alleged in the information. . . ."

■ Defendant contends, in the second assignment of error, that the trial court erred in overruling his Motion for Continuance because he had been subpoenaed to appear to testify in Federal District Court on the same day of his trial. We need only observe that the record totally fails to support defendant's contention that he was prejudiced by the court's denial of the continuance. The record reflects the following:

"MR. JORDAN: Yes. We also had one that you indicated we would take up Monday having to do with the fact that he has been subpoenaed to appear in Federal Court this morning.

"THE COURT: Well, I think on the latter one you informed me that you were told by the Federal Court officials to proceed and they would take him when we got through with him.

"MR. JORDAN: Yes. I visited with Mr. McDonald.

"THE COURT: Based upon that, that's overruled. . . ." [Tr. 2–3]

We thus conclude that the trial court did not abuse its discretion in denying the Motion for Continuance. See *Mangum v. State*, Okl.Cr., 541 P.2d 1348 (1975).

■ Defendant next asserts that the trial court erred in overruling his Motion for Continuance due to the illness of Mrs. Edith Viersen Terry. We first observe that the defendant's Motion for Continuance does not comply with the requirements of 12 O.S.1971, § 668, which provides, in part, as follows:

"A motion for a continuance, on account of the absence of evidence, can be made only upon affidavit, . . . and if it is for an absent witness, the affidavit must show where the witness resides, if his residence is known to the party, and the probability of procuring his testimony within a reasonable time, and what facts he believes the witness will prove, and that he believes them to be true. . . ."

The Affidavit in the instant case merely asserts that Mrs. Edith Viersen Terry is a material witness and "that said witness is so sick or infirm as to afford reasonable grounds for apprehending that she will not be able to attend the trial." [O.R. 72] In *Howard v. State*, 23 Okl.Cr. 1, 211 P. 1065

(1923), we stated in the first paragraph of the Syllabus:

"There is no abuse of judicial discretion in overruling a motion for a continuance, where the motion and supporting affidavits do not show conditions indicating that the desired testimony could probably be procured at a subsequent term of court.

(a) The same rule applies where the desired testimony is cumulative and is predicated upon uncertain information and belief."

We further observe that the defendant was permitted to read to the jury his selected portions of Mrs. Terry's prior testimony given at the trial of Cephus Dyer. We therefore find this assignment of error to be without merit.

■ Defendant contends, in the fourth assignment of error, that the trial court erred in allowing Captain Fred Baker to sit at counsel table after the rule had been invoked. The record reflects that the trial court inquired of the prosecuting attorney the purpose of having the officer remain in the courtroom. The court was advised that the purpose was to "counsel with the prosecutor." [Tr. 11] In *Baker v. State*, Okl.Cr., 306 P.2d 344 (1957), we stated in paragraphs 1 and 2 of the Syllabus:

"1. The exclusion of witnesses for the state, at defendant's request, is not an absolute right in all cases, but rests in the sound discretion of the trial court, and this includes the power to except one or more witnesses from the operation of the rule.

"2. It is proper practice to permit the prosecuting witness, or some officer active in the prosecution of the case, to remain in the courtroom to advise the prosecuting attorney as to the facts, interest, and character of witnesses, etc., though the state's witnesses generally are excluded."

■ Defendant further contends, under this assignment of error, that he was preju-

diced in that on one occasion Officer Baker talked to a juror in the jury box thereby currying favor with said juror. We need only observe that this contention was raised for the first time in defendant's Motion for New Trial. The record does not reflect that defendant made a timely objection to the alleged conversation with the juror. In *Williams v. United States*, 66 F.2d 868 (10th Cir. 1933), the Court stated:

". . . Alleged errors during the progress of the trial should be called to the trial court's attention by specific objection and exception in order that it may have the opportunity to correct the error. In the absence of such specific objection and exception, alleged trial errors ordinarily will not be reviewed on appeal. . . . "

■ Defendant next asserts that the trial court erred in denying a new trial because the verdict was decided by means other than fair expression of opinion on the part of the jurors as is indicated by a note sent to the trial court by a juror. The record reflects the note states as follows:

"We have reached a verdict due to our memory it took us a little longer.
                    /s/ Bill Conataer
                    Juror for the Last Time
                    I HOPE
                    Please sign—" [Tr. 128]

■ We cannot agree with defendant's conjecture that the note reflects that the jury's verdict was decided by means other than fair expression of opinion. The note merely states that the deliberations were extended because of some of the juror's faulty memory and that one of the jurors did not desire to again serve on a jury. We must decide cases based upon the law and evidence, not speculation. We therefore find this assignment of error to be without merit.

■ Defendant contends, in the sixth assignment of error that the trial court erred in not honoring the jury's request to be informed of a specific detail of the testimo-

ny of a witness. The jury during deliberations sent the following note to the trial court:

"Did Gayla Adams in her testimony say that Mrs. Turney's ring was appraised for $14,000.00." [Tr. 108]

The trial court declined to answer the question and instead instructed the jury as follows:

"Ladies and Gentlemen of the Jury, you must call upon your memory as to the evidence." [Tr. 128][1]

Defendant argues that 22 O.S.1971, § 894 required the trial court to honor the jury's request. We disagree. In *Kovash v. State*, Okl.Cr., 519 P.2d 517 (1974), we stated:

". . . This Court has interpreted this statute as not creating an absolute right to have testimony re-read, but a matter left to the discretion of the trial court subject to review by this Court. . ."

Further, in *Jones v. State*, Okl.Cr., 456 P.2d 610 (1969), we held:

". . . The trial judge declined the request for two reasons: first, that reading the testimony of one witness a second time would be repetitious; and secondly, that a second reading would add undue emphasis to that portion of the testimony read. . . .

\*  \*  \*  \*  \*  \*

"We interpret the mandatory aspect of 22 O.S.A. § 894 to be that which provides for the return of the jury to the courtroom, and for the notification of the parties to the trial that the jury is being returned for additional information, or instruction. The termination [sic] of whether or not the jury's request is required lies within the judicial discretion of the trial judge. . . ."

■ The defendant contends, in the seventh assignment of error, that the trial court erred in denying the Motion for New Trial because the verdict was contrary to

the evidence. The defendant argues that the identification of him by Mrs. Turney was tainted in that she did not give a detailed description of the defendant at the scene and that she was subsequently shown a picture of the defendant. We are of the opinion that this assignment of error is not properly before this Court. The record does not reflect that the defendant objected to the testimony of Mrs. Turney as to defendant's identification. In *Towning v. State*, Okl.Cr., 521 P.2d 415 (1974), we stated:

". . . Further, even if defendant had been denied counsel at the pretrial lineup, the defendant waived his right to raise the admissibility of the in-court identification based upon a defective lineup by not properly preserving the matter for review. The transcript of the proceedings at trial reveals that the testimony of the identifying witness was admitted without objection by the defendant; the record does not reflect that the defendant at any time prior to or during the course of the trial requested evidentiary hearing on the matter. The defendant's right to have a hearing conducted outside the presence of the jury on the question of the pretrial identification procedure is dependent upon his raising a timely objection to the in-court identification of the defendant. See *Anthamatten v. State*, Okl.Cr., 506 P.2d 959 (1973) citing *Davis v. State*, Okl.Cr., 467 P.22 521 (1970). . . ."

■ We further observe that the witness's identification of the defendant was unequivocal. She testified that the defendant was in the well-lighted house from thirty to forty minutes. She further testified that she identified the picture of the defendant from a series of six photographs of black subjects. We therefore find this assignment of error to be without merit.

■ Defendant next asserts that the trial court should have granted the Motion for New Trial because the jury did not follow

---

1. The note, previously referred to, regarding the verdict, signed by Bill Conataer, was written on the bottom of the trial court's instruction to the jury, cited above.

the court's instructions. Defendant does not support this assignment of error with citation of authority. We have repeatedly held that it is necessary for appellants not only to assert error, but to support their contentions by both argument and citations of authority. Where this is not done, and it is apparent that defendant has been deprived of no fundamental rights, this Court will not search the books for authorities to support the mere assertion that the trial court erred. See, *Sandefur v. State*, Okl. Cr., 461 P.2d 954 (1969).

■ Defendant contends, in the tenth assignment of error, that the trial court erred in not supplying his court-appointed attorney a free transcript to use in preparation of the Motion for New Trial. We are of the opinion that this assignment is patently frivolous. Because of the crowded court dockets and the time limitation involved in filing a Motion for New Trial, it would create chaos within the court structure to hold otherwise. If indigent, a defendant is clearly entitled to a free copy of the transcript of trial for appellate purposes, but not for the preparation of a Motion for New Trial.

■ Defendant contends, in the eleventh assignment of error, that the trial court erred in not granting a new trial in that a juror approached his counsel in the parking lot after the trial and stated that she did not believe the defendant was guilty. We need only observe that it has long been the law of this State that a juror may not impeach the verdict of a jury by his own statement. In the early case of *Keith v. State*, 7 Okl.Cr. 156, 123 P. 172 (1912), this Court stated:

". . . It is true that hardships may arise under the rule forbidding the introduction of the testimony or affidavits of jurymen, for the purpose of impeaching their verdict; and, while it may be that justice may occasionally miscarry, unless such evidence be admitted, on the other hand, to receive such evidence opens wide the door to corrupt practices. The jury will be subjected to influences after they have been dismissed from duty as jurors, to induce them to repent of their verdict and endeavor to revoke it. They would be liable to be tampered with. It would be difficult to place a limit to the corruption such a practice might engender. . . . ."

■ Defendant next asserts that the trial court erred in not granting a new trial for the reason that the jury list was made available to the public and was not retained securely by the clerk, unopened until after the jury had been impaneled, in violation of 38 O.S.1971, § 26. The record reflects that this contention was first raised by the defendant in his Amended Motion for New Trial. The provisions of 22 O.S.1971, § 634, are as follows:

"A challenge to the panel must be taken before a jury is sworn, and must be in writing, specifying plainly and distinctly the facts constituting the ground of challenge."

We therefore find this assignment of error is improperly before this Court. See *Ward v. State*, Okl.Cr., 508 P.2d 708 (1973) and *Stuart v. State*, Okl.Cr., 522 P.2d 288 (1974).

■ In the final assignment of error it is contended that the trial court erred in not granting a new trial for the reason that the accomplice's testimony was not corroborated as required by law. We are of the opinion that this assignment is wholly without merit. The testimony of Viola Turney clearly corroborates the testimony of the accomplice, Gayla Adams.

In conclusion, we observe that the record is free of any error which would justify modification or require reversal. The judgment and sentence is accordingly *AFFIRMED*.

BRETT, P. J., and BLISS, J., concur.