Paul L. WILSON, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–716.

Court of Criminal Appeals of Oklahoma.

Aug. 12, 1977.

John T. Elliott, Public Defender, Oklahoma County, Michael M. Jackson, Asst. Public Defender, for appellant.

Larry Derryberry, Atty. Gen., for appellee.

## OPINION

BRETT, Judge:

Appellant, Paul L. Wilson, hereinafter referred to as defendant, was charged by information in Case No. CRF–75–3620, in the District Court, Oklahoma County, with the crime of Pointing a Weapon at Another, in violation of 21 O.S.1971, § 1289.16. Defendant was tried by jury and was represented by counsel. The jury returned a verdict of guilty, assessing punishment at five (5) years' imprisonment in the State penitentiary. From said judgment and sentence a timely appeal has been perfected to this Court.

At about 2:20 a. m. on September 21, 1975, William Easley, an Oklahoma City airport policeman, observed the defendant enter the exit side instead of the entrance side of his security checkpoint at Will Rogers Airport. Easley told the defendant he was on the wrong side, and defendant turned and walked away. Some five minutes later, alarmed by the shout of another security guard, Easley was again alerted to defendant attempting to enter the exit ramp. As Easley chased the fleeing defendant across a hallway, he tackled him, but the defendant wrestled and obtained Easley's gun, a loaded .357 Magnum, which he pointed at Easley. Then over the course of some 15 to 25 feet along the concourse, a struggle ensued between Easley and defendant, at the end of which, Easley was able to recover his weapon. Easley identified defendant. Although he had no luggage, defendant possessed an airline ticket with a departure time later that day.

The State's next witness was George Kinney of Pinkerton Security, Inc., who observed defendant attempting to pass through the exit ramp at Easley's security checkpoint on the 21st of September, 1975. He alerted Easley and gave assistance in defendant's pursuit but found defendant subdued upon his arrival. His testimony corroborated that of Officer Easley.

The State then rested.

Rick Burnett, a jailer with the Oklahoma County Sheriff's Office, was the first witness for the defense. He described the defendant as "not a normal person." When questioned as to defendant's personal characteristics, Burnett described him as lacking in memory, communicatively unintelligible and grossly lacking in personal hygiene. Another jailer for the Sheriff's Office, Bill Booth, corroborated Deputy Burnett's testimony.

The defendant then took the stand. Although largely unresponsive, defendant claimed he did not know when he was restrained. Moreover, he expressed a general inability to recall the testimony of previous witnesses. The corpus of defendant's testimony concerned the various states in which he had previously resided.

Next, the defendant recalled Bill Booth who testified that an airline ticket had been found on defendant at the time of the arrest. The ticket was admitted into evidence as defendant's first exhibit.

On rebuttal, the State called Dr. Lorraine Schmidt, a forensic psychiatrist employed by the Oklahoma Department of Mental Health. Her testimony dealt with her men-

tal examination of defendant. In addition to interviewing, the defendant's psychiatric testing included an electroencephalogram, skull x-rays and urine and blood studies. Schmidt's conclusion was that the defendant could distinguish between right and wrong.

As his first and only assignment of error, defendant urges that the verdict of the jury is contrary to the court's instructions concerning the issue of insanity. We find this proposition to be without merit.

No question regarding defendant's ability to aid in his own defense was ever raised, so 22 O.S.Supp.1975, § 1161; 22 O.S.1971, §§ 1162–1195 are not applicable. Therefore, the relevant statute is 21 O.S.1971, § 152, which provides:

"All persons are capable of committing crimes, except those belonging to the following classes:

\*    \*    \*    \*    \*    \*

"4. Lunatics, insane persons, and all persons of unsound mind, including persons temporarily or partially deprived of reason, upon proof that at the time of committing the act charged against them they were incapable of knowing its wrongfulness."

 The question of sanity at the time of the commission of an alleged offense is a question of fact for the jury. See, *Stidham v. State*, Okl.Cr., 507 P.2d 1312 (1973). Although a nonexpert witness may, upon a showing of sufficient opportunity to observe, give his opinion as to the defendant's sanity; however, the question is still one of fact placed in the hands of the jury. See, *High v. State*, Okl.Cr., 401 P.2d 189 (1965).

Here, no reasonable doubt of defendant's sanity was ever raised. Dr. Schmidt's testimony was to the effect that defendant could clearly distinguish between right and wrong. Evidently the jury was persuaded by this testimony.

It is not enough in a criminal trial for defendant to attempt to merely raise some doubt as to his emotional or mental instability, or even to offer proof that he is emotionally or mentally ill, as was done in this trial. There must be other evidence or testimony to prove that defendant did not know right from wrong and that he could not appreciate the wrongfulness of his criminal act at the time he committed it. In *Marr v. Page*, Okl.Cr., 437 P.2d 562 (1968), we stated in the second paragraph of the Syllabus that:

"The test of criminal responsibility for committing [a] criminal act is fixed at [a] point where accused has mental capacity to distinguish between right and wrong as applied to the particular act, and to understand the nature and consequences of such act."

Defendant's testimony serves no other purpose than to constitute self-serving statements in order to establish his defense theory. He was admitted to Central State Griffin Memorial Hospital in Norman, Oklahoma, for observation, and by letter from Dr. Lorraine Schmidt the District Court was advised that the defendant was found not to be psychotic, that he could distinguish right from wrong and could assist counsel in his defense. We therefore find defendant's assignment of error to be without merit.

For the above and foregoing reasons judgment and sentence is AFFIRMED.

BUSSEY, P. J., concurs.