Eula Vay WEST, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F-79-664.

Court of Criminal Appeals of Oklahoma.

Oct. 8, 1980.

Don L. Wyatt, Ada, for appellant.

Jan Eric Cartwright, Atty. Gen. of Okl., Danny K. Shadid, Asst. Atty. Gen., Michael Lee Bardrick, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

On appeal from a conviction in Pontotoc County District Court, Case No. CRF–79–7, wherein appellant, Eula Vay West, hereinafter referred to as defendant, was found guilty of Manslaughter in the First Degree and sentenced to four (4) years' imprisonment, defendant contends in her first assignment of error that the trial court should have sustained her demurrer/motion for directed verdict. In support thereof she argues that the evidence taken in its best light showed that she was in actual or apparent fear and therefore acted justifiably when she shot and killed Roy Akehurst.

The evidence presented at trial reflects that on the afternoon of January 9, 1979, Bob Mitchell and Billy Hanks delivered a washing machine to the defendant's home in Ada, Oklahoma. While installing the machine they discovered that the hose connections were short and decided to obtain the necessary items and return the following morning to complete installation. The next day Billy Hanks and Roy Akehurst parked their truck in front of the West's home and proceeded to the front porch of defendant's house with the required equipment. As they knocked on the door Akehurst observed a gun pointing at him and Hanks from a window. As Hanks departed the porch and Akehurst backed away two shots were fired. Akehurst was shot in the chest and subsequently died. Hanks ran from the scene and stopped an approaching patrol car which was responding to a radio dispatch.

By way of Kim Smith's testimony it was established that on the morning in question one of defendant's children informed her that two men were outside "getting something off of a gun rack and it looks like they are loading guns." The defendant phoned for police assistance and when police failed to immediately arrive she telephoned again. Upon completion of the second call defendant armed herself with her husband's pistol and fired two shots from a bedroom window.

When police arrived they found the defendant hysterical, seized a loaded .38 caliber pistol from a dining room table, and summoned an ambulance for Mr. Akehurst who was pronounced dead before he reached the hospital.

It has long been recognized that the apprehension of danger and the belief of the necessity which would justify killing in self–defense is not to be tested by defendant's honesty or good faith but by whether the defendant had reasonable grounds to believe the killing necessary. *Fixico v. State*, 39 Okl.Cr. 95, 263 P. 171 (1928); *Hood v. State*, 70 Okl.Cr. 334, 106 P.2d 271 (1940); *Anderson v. State*, 90 Okl.Cr. 1, 209 P.2d 721 (1949); *Jamison v. State*, Okl.Cr., 304 P.2d 371 (1956). Fear

alone is not enough to justify one person to take the life of another. Such fear must have been induced by some overt act, gesture, or word spoken by the deceased at the time the homicide occurred which would form a reasonable ground for the belief of the accused that he is about to suffer death or great bodily harm. It is within the exclusive province of the jury, as the sole trier of facts, to determine, in the light of all the circumstances surrounding the slaying, whether or not such *reasonable* ground existed as to constitute a justifiable defense of the person of the accused. *McKee v. State*, Okl.Cr., 372 P.2d 243 (1962). Since there was no kicking, banging or loud noises or voices at the time the two repairmen came to the home of the defendant, and after seeing the gun aimed toward them from the window both Akehurst and Hanks attempted to depart the porch, we conclude that the trial court did not err in overruling defendant's demurrer/motion for directed verdict. To the contrary, the question was properly submitted to the jury under proper instruction. *Towry v. State*, Okl.Cr., 540 P.2d 597 (1975).

■ In her next assignment of error defendant contends that the trial court erred in failing to sustain her motion for directed verdict based on evidence produced which she contends indicated she was of unsound mind and insane. While it is true that defendant introduced evidence to the effect that she was retarded having an I.Q. of 58, that standing alone did not establish a viable defense of unsound mind and insanity. The evidence presented through the testimony of the clinical psychologist, Dr. Jon Dale Cargill, was that the defendant knew right from wrong and was sane under the M'Naghten Rule. During cross–examination, Dr. Cargill stated the following:

Answer: Does she know right from wrong in the McNaughton [sic] sense?
Question: Yes.
Answer: Yes.
Question: So in the McNaughton [sic] sense, she is sane?
Answer: Yes. (Tr. 378).

In *Dare v. State*, Okl.Cr., 378 P.2d 339 (1963), we held in our syllabus as follows:

4. On murder prosecution, the question of insanity at the time of the commission of the crime presents a question of fact for the sole determination of the jury, and where there is evidence tending to support the finding it is not the province of the Appellate Court to weigh the same.

5. Instruction on insanity, based on M'Naghten Rules, was proper since same has been the test recognized by the Court of Criminal Appeals to be used in determining Criminal responsibility of an accused.

\* \* \* \* \* \*

7. Held: The M'Naghten Rules, as a test for criminal responsibility, will remain the law in this jurisdiction until The Court of Criminal Appeals can conscientiously adopt rules, taking into consideration advances both legal and medical and the statutes of Oklahoma relating to criminal responsibility, which will better serve the orderly administration of justice.

See *High v. State*, Okl.Cr., 401 P.2d 189 (1965); *French v. State*, Okl.Cr., 416 P.2d 171 (1966); *Stidham v. State*, Okl.Cr., 507 P.2d 1312 (1973); *Wilson v. State*, Okl.Cr., 568 P.2d 1279 (1977).

■ In the instant case the question of the defendant's sanity at the time the homicide occurred was properly presented to the jury for determination, whose judgment thereon will not be disturbed by this Court.

■ In defendant's third assignment of error she contends that the trial court erred in giving an instruction on excusable homicide. We do not deem it necessary to discuss whether such instruction was erroneous since the record reveals that defendant requested an instruction on both justifiable and excusable homicide and said instructions were given. Under such circumstances, a defendant will not be permitted to request a particular instruction and then contend that the giving of said instruction was error. *Emerson v. State*, Okl.Cr., 393 P.2d 541 (1964); *Ferrell v. State*, Okl.Cr., 475 P.2d 825 (1970); *Haggy v. State*, Okl. Cr., 509 P.2d 936 (1973).

In her next assignment of error defendant alleges the trial court erred in failing to grant a mistrial after being advised that a member of the jury was prejudiced regarding the trial of defendant and had made statements to the jury panel concerning defendant's guilt. The record reflects that after the State rested, defense counsel approached the bench and informed the trial court of the following:

> MR. WYATT: It has come to the Defendant's attention, through a phone call from a juror by the mame [sic] of Darras, who was preempted off the jury panel by the State, on voir dire, that Mrs. McCown, one of the present jurors, has been speaking to the jury panel in regards to the guilt of this woman, prior to the introduction of any evidence or voir dire, or opening statement. After having been advised of this fact, that she was making such statements, and after having taken notice of the fact that during voir dire she denied having any preconceived notions. We are drawing this to the Court's attention and would ask the Court to make inquiry to either determine if this woman is prejudice prior to the hearing of the evidence, or if she still is of an open mind and can render a fair decision.

> MR. PETERSON: If the Court pleases, if the Court is going to do this, I would request that it be done out of the presence of the other jurors.

> MR. WYATT: We have no objection on that.

> THE COURT: I will consider that motion. (Tr.278).

The record fails to reflect that defense counsel offered any evidence to support his allegation aside from his statement to the trial court. A hearing was not conducted nor was there further request by the defendant to conduct same. The defendant did not raise the alleged error in her motion for new trial and no showing of prejudice was ever attempted.

▮ In the case of *Still v. State*, Okl. Cr., 484 P.2d 549 (1971), we held that where there is no offer of proof and no evidence to support any finding of unauthorized jury communication, reversal cannot be had. A defendant must show actual prejudice from any alleged jury misconduct and defense counsel's mere speculation and surmise is insufficient premise upon which to cause reversal. *Hayes v. State*, Okl.Cr., 397 P.2d 524 (1964); *Glasgow v. State*, Okl.Cr., 370 P.2d 933 (1962). In light hereof we find this assignment of error without merit.

We next consider defendant's contention that the trial court committed error in failing to suppress extrajudicial statements of the defendant admitted in evidence at trial. The record shows on the day following the homicide, the defendant went to the police station and was escorted by her husband. Defendant was advised of her *Miranda* rights and she stated that Lewis Watson was her choice of attorneys. Mr. Watson was telephoned by the police officer upon request of defendant's husband. The officer testified after making the telephone call to Mr. Watson that the following occurred:

> Question: Did you attempt to interrogate Mrs. West, after she said she wanted a lawyer?

> Answer: No, sir, I didn't.

> Question: Did she make any statements voluntarily?

> Answer: Yes, she did.

> Question: Without questions being asked of her?

> Answer: Yes.

> Question: And do you recall what those statements were?

> Answer: She said: I wish it hadn't have happened. I wish it had of been me instead of him. I don't want to see another gun.

> Question: Do you recall anything else she might have said? Of course, this has been quite a while ago.

> Answer: She said that she thought they was loading their guns.

> Question: She said that on the tape.

> Answer: Yes.

> Question: Do you recall any other voluntary statements? She said she wished it hadn't have happened.

Answer: I wish I hadn't have done it. I wish it had of been me instead of him. I don't want to see another gun.

Question: And you didn't elicit those answers from her with any questions? .

Answer: No, sir.

Question: Was this after the tape was turned off and you had called Mr. Watson?

Answer: Yes. (Tr. 249–250)

■■■ The defendant contends, in essence, that once there has been a request for an attorney, a subsequent intelligent waiver of the right to counsel's presence is impossible and any statement obtained in the absence of counsel must be suppressed. We do not agree. The trial court's finding that the statements were voluntary and not the result of an interrogation is indeed supported by the record. In speaking to the admissibility of such statements, in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court stated:

> In dealing with statements obtained through interrogation, we do not purport to find all confessions inadmissible. Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. *Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.* (Emphasis added) (Footnote deleted) •

We agree with the trial court's finding that the statements were voluntarily made and were not the result of an interrogation. See *Davis v. State*, Okl.Cr., 524 P.2d 46 (1974).

■■ In addressing defendant's next assignment of error that the trial court should have suppressed from evidence a .38 caliber pistol which she contends was removed from her residence during an allegedly illegal search and seizure, we conclude there was no unlawful search and seizure. The Fourth Amendment of the United States Constitution and Article Two, Section 30, of the Oklahoma Constitution prohibit *unreasonable* searches and seizures. In the instant case, the officers were responding to a disturbance call made by the defendant to the Ada Police Department. Upon arrival at defendant's home, officers Reed and Scott were informed by Billy Hanks that Akehurst had just been shot outside of defendant's home. Officer Reed approached the front door to the defendant's residence, heard hollering and screaming from inside, identified himself as a police officer, and, as the door was opened by defendant, inquired of defendant if she or anyone inside the residence had a gun, to which the defendant replied, "No." The officer observed the gun lying on the dining room tale, unloaded it and took it into his possession. Such action was reasonable under the circumstances in this case. *Maryland Penitentiary v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).

■ The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so endangers their lives or the lives of others. The officers here acted reasonably. There were a number of small children present at the home of the defendant when the homicide occurred. A young man was lying in the front yard bleeding profusely from gunshot wounds. The officers had been summoned because of a disturbance call wherein it was related that someone had a gun. Under these circumstances the officers would have been remiss in their duty had they failed to act as they did. *Ray v. State*, Okl.Cr., 510 P.2d 1395 (1973); *Bell v. State*, Okl.Cr., 512 P.2d 222 (1973); *Johnson v. State*, Okl.Cr., 554 P.2d 51 (1976); *Singleton v. State*, Okl. Cr., 568 P.2d 284 (1977).

As her seventh assignment of error defendant contends that the trial court committed error in allowing the State to present the testimony of Tom Jordan, an agent for the Oklahoma Bureau of Investigation who appeared as an expert witness in the area of ballistics. Defendant argues that the trial court earlier sustained a defense motion requiring the State to endorse and furnish the names of all witnesses who were to testify at trial or who the State anticipated would testify at trial. Although this assignment of error is improperly before the Court, in that it is not supported by citation of authorities, we have carefully examined ·the record and find said assignment to be without merit. There is showing in the record that defense counsel requested a continuance or expressed surprise. Defense counsel announced ready and wished to be heard on evidentiary motions; furthermore, trial did not commence for more than thirty (30) days after the endorsement of witness Jordan. The proper procedure for a surprised defendant to follow is set out in the syllabus in *Paschall v. State*, 96 Okl.Cr. 198, 252 P.2d 175 (1952):

· If defendant's counsel is surprised at such action and such endorsement of an additional witness requires a production of further testimony by defendant, he should withdraw his announcement of ready for trial and should file a motion for a postponement or a continuance in which he should set out the facts constituting such surprise, and the other evidence, if any, he could produce to rebut the testimony of such additional witness if the trial of the case was continued. Where he fails to do this the error, if any, is waived.

Also see *Leppke v. State*, Okl.Cr., 559 P.2d 459 (1977). Accordingly, defendant's seventh assignment of error is without merit.

In her eighth assignment of error defendant contends that the trial court erroneously instructed the jury on murder in the second degree.

We have repeatedly held that one convicted of manslaughter may not complain of instructions on murder. *Cottrell v. State*, Okl.Cr., 458 P.2d 328 (1969); *Grindstaff v. State*, 82 Okl.Cr. 31, 165 P.2d 846 (1946). Accordingly, we find this assignment of error to be completely without merit.

In her ninth assignment of error defendant contends that the trial court erred in giving multiple instructions covering murder in the second degree, manslaughter in the first degree, manslaughter in the second degree, justifiable homicide and excusable homicide. This assignment of error is not supported by the citation of authorities and we have consistently held that it is necessary for defense counsel not only to assert error, but to support his contentions by both argument and the citation of authorities. When this is not done, and it is apparent the defendant has been deprived of no fundamental right, this Court will not search the books for authorities to support the mere assertion that the trial court has erred. *Felts v. State*, Okl. Cr., 588 P.2d 572 (1978).

We have carefully reviewed the instructions and are of the opinion that they covered the subject matter of inquiry and did not deprive the defendant of any fundamental right. Defendant further argues that the jury was confused or misled by the multiplicity of the instructions given. However, the record is devoid of any support for this contention and, as we stated in *Luckey v. State*, Okl.Cr., 529 P.2d 994 (1974):

. . . where counsel is not satisfied with instructions that are given, or desires the court to give any particular instruction, it is the duty of counsel to prepare and present to the court such desired instructions and request that they be given. In the absence of such a request, the Court of Criminal Appeals will not reverse the case if the instructions generally cover the subject matter of inquiry and there is no fundamental error. (Citations omitted)

Defendant asserts in her tenth, eleventh and twelfth assignments of error

that the evidence was insufficient to support the verdict of the jury and that said verdict was rendered in total disregard of the trial court's instructions. For the reasons and authorities stated heretofore we are of the opinion that these assignments of error are completely without merit.

 In her final assignment of error defendant contends that the verdict was excessive and given under the influence of passion and prejudice. We cannot agree with defendant's conjecture that the jury's verdict was decided by means other than a fair expression of opinion. The evidence of defendant's guilt was substantially shown by the evidence presented at trial and the punishment imposed by the jury was the minimum permitted for a conviction under manslaughter in the first degree. The law in this State prohibits individual jurors from attempting to discredit or impeach their verdict after it has been finally rendered. *Johnson v. State*, Okl.Cr., 559 P.2d 466 (1977); *Daniels v. State*, Okl.Cr., 554 P.2d 88 (1976). We do note, however, that the comments of the jury foreman solely expressed a concern for leniency at formal sentencing and not, as defense counsel suggests, impropriety on the part of the jury in arriving at a decision concerning the guilt of the defendant. At best, said comments could only be considered a request for leniency in sentencing which is not binding on the sentencing court. *Bowers v. State*, Okl. Cr., 542 P.2d 950 (1975). There is no showing that the jury's verdict was improperly rendered or unduly influenced.

For the reasons stated above the judgment and sentence appealed from should be, and the same is, hereby, AFFIRMED, and we direct the attention of counsel for the appellant to the provisions of 22 O.S.1971, § 994.

CORNISH, P. J., concurs.

BRETT, J., specially concurs.